U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

BALTIMORE COUNTY,
et al., Defendants.

Civil No. L–07–2500.

United States District Court,
D. Maryland.

Jan. 21, 2009.

798

Debra Michele Lawrence, Maria Salacuse, U.S. Equal Employment Opportunity Commission, Baltimore, MD, Christopher W. Lage, U.S. Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, Jacqueline H. McNair, U.S. Equal Employment Opportunity Commission, Philadelphia, PA, for Plaintiff.

James J. Nolan, Jr., Baltimore County Office of Law, Towson, MD, Linda D. McKeegan, Kahn Smith and Collins PA, Baltimore, MD, Bernard Ilkhanoff, Ilkhanoff and Silverstein PC, Shrewsbury, PA, Warren Gary Kohlman, Jennifer L. Hunter, Bredhoff and Kaiser PLLC, Washington, DC, for Defendants.

### MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

In this action brought under the Age Discrimination in Employment Act (the "ADEA"), the U.S. Equal Employment Opportunity Commission (the "EEOC") challenges an aspect of the Baltimore County pension system that governs employees hired prior to July 1, 2007. Under that system, the percentage of salary that new-hires pay into Baltimore County's pension plan varies depending on the number of years to retirement eligibility. For example, a thirty-year-old new-hire contributes more than a twenty-year-old new-hire. In its suit, the EEOC contends that this provision discriminates against older workers.

Following discovery, the parties filed cross-motions for summary judgment. The Court heard oral argument on December 16, 2008. The Court concludes that the former Baltimore County plan does not violate the ADEA because (i) Baltimore County was motivated by a permissible principle, the time value of money, rather than the age of new-hires, and (ii) retirement benefits of older new-hires accrue faster than do the benefits of younger new-hires. Thus, the Court will, by separate order: (1) deny the EEOC's motion, (2) grant Baltimore County's motion, and (3) close the case.

## I. FACTUAL BACKGROUND

Pursuant to Article 5 of the Baltimore County Code, Baltimore County maintains a defined benefit pension plan known as the Employee Retirement System (the "ERS"). Participation in the ERS is mandatory for full-time employees younger than fifty-nine years old. The ERS requires employees to contribute a percentage of their salaries to the pension plan, which is also funded by employer contributions. For individuals hired prior to July 1, 2007, the percentage employees are required to contribute varies from employee to employee, and is determined by a worker's age at the time of enrollment. For example, an employee who enrolls in the ERS at age twenty is required to contribute 4.42% of his salary, whereas an employee who enrolls at age fifty-eight must contribute 7.65% of his salary. In other words, the older an employee is when he enrolls in the ERS, the greater the amount deducted from his paycheck as a contribution to the fund. Similarly, Baltimore County contributes more towards the relative cost of funding retirement benefits for older new-hires. Thus, while older new-hires contribute more towards their retirement benefits, they bear progressively less of the relative cost of those benefits.

On June 6, 2007, Baltimore County changed its pension system. Under the new system, employees hired after July 1, 2007 contribute to the ERS at a flat rate, regardless of their age at the time of hiring. As noted above, individuals hired before that date make contributions at rates determined by their age at the time of enrollment. The EEOC brings this action on behalf of older Baltimore County workers hired prior to July 1, 2007.[1]

In April 1999 and January 2000, the EEOC issued Notices of Charge of Discrimination to Baltimore County on behalf of Richard Bosse and Wayne Lee, correctional officers with the Baltimore County Bureau of Corrections. Both Bosse and Lee claimed that requiring older new-hires to contribute more than younger new-hires discriminates against employees on the basis of age. While Baltimore County denies that its former pension system was discriminatory, it nonetheless cooperated in the EEOC's investigation and provided details about the ERS. On August 24, 2000, in response to a request for additional information, Baltimore County provided the EEOC with financial data concerning the relationship between an ERS participant's age and his retirement costs. The EEOC did not respond, and no further actions were taken for over five years.

On March 6, 2006, the EEOC notified Baltimore County that it had determined that the ERS violated the ADEA. After the parties' settlement efforts failed, the EEOC filed suit on September 18, 2007, alleging that Baltimore County's practice of requiring older workers to contribute more to the mandatory pension plan violates Section 4(a)(1) of the ADEA.[2] 29 U.S.C. § 623(a)(1). On January 9, 2008, the EEOC filed an Amended Complaint alleging that the ERS contribution system also violates Section 4(i) of the ADEA. 29 U.S.C. § 623(i). The Court denied Baltimore County's Motion to Dismiss on July 24, 2008, and held oral argument regarding

---

1. It should be noted that the ADEA only protects workers aged forty and above. As a result, had the EEOC prevailed, determining the relief to be awarded would not have been straightforward. For example, a thirty year old new-hire would not receive ADEA protection for ten years.

2. The EEOC also named six unions as indispensable party defendants to the lawsuit, pursuant to Federal Rule of Civil Procedure 19(a).

the cross-motions for summary judgment on December 16, 2008.

## II. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

## III. ANALYSIS

In its amended complaint, the EEOC asserts claims under both Section 4(a)(1) and Section 4(i) of the ADEA. *See* 29 U.S.C. § 623(a)(1); 29 U.S.C. § 623(i). After careful consideration of the operation of the ERS, the Court finds that Baltimore County has violated neither of those statutory provisions.

### A. Section 4(a)(1)

The EEOC first claims that the older version of the ERS violates Section 4(a)(1) of the ADEA. Section 4(a)(1) makes it "unlawful for an employer ... [to] discriminate against any individual [over forty years of age] with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a)(1). The phrase "compensation, terms, conditions, or privileges of employment," as used in that section, includes "all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan." 29 U.S.C. § 630(*l*).

■ While it may be axiomatic, it should be noted that the ADEA does not prohibit employer actions when the motivating factor is something other than the employee's age. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Indeed, as the Supreme Court has explicitly explained, "[w]hen the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate or stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age." *Id.* at 611, 113 S.Ct. 1701.

Moreover, this case is controlled by a recent Supreme Court decision concerning a defined benefit pension plan offered by the State of Kentucky. *See Kentucky Retirement Sys. v. EEOC,* —— U.S. ——, 128 S.Ct. 2361, 171 L.Ed.2d 322 (2008). Under Kentucky's system, if a worker in a hazardous job was injured prior to becoming eligible for retirement benefits, the plan added on the necessary years of service. This was done to ensure that employees injured in the line of duty and no longer able to work would receive support in the form of retirement benefits. The EEOC maintained that this provision discriminated against older injured workers who had already reached retirement age. Although injured, those workers did not receive any additional years of imputed service. The Agency contended that the Kentucky system violated the ADEA because it treated younger workers more favorably. *Id.* at 2365.

After examining Kentucky's system—and the motivating factor behind it—the

Court held that "[w]here an employer adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by *age*, not pension status." *Id.* at 2370. The Court then concluded that Kentucky's plan had been motivated by age, not pension status, and, as a result, was not in violation of the ADEA. *Id.* In arriving at that conclusion, the Court relied upon six factors. As demonstrated below, those factors demand a similar conclusion in this case.

■ First, the Court noted that "as a matter of pure logic, age and pension status remain 'analytically distinct' concepts . . . one can easily conceive of decisions that are actually made 'because of' pension status and not age, even where pension status is itself based on age." *Id.* at 2367. The instant case involves just such a decision. Baltimore County's requirement that older new-hires pay higher contribution rates is based on the number of years a new-hire has until reaching normal retirement age and how long it will take to accumulate a sufficient reserve to fund the new-hire's life annuity. This is an economic—not age-based—consideration. It is of no legal consequence, therefore, that the ERS's member contribution rates are correlated with age.

Second, *Kentucky Retirement Systems* observed that several circumstances eliminated the possibility that pension status was serving as a proxy for age. *Id.* at 2367. Of particular importance, the Court explained that Kentucky's plan provisions were part of "a set of complex systemwide rules [that] involve, not wages, but pensions—a benefit that the ADEA treats somewhat more flexibly and leniently in

respect to age." *Id.* Like Kentucky's plan, the ERS provision at issue here is part of a set of complex systemwide rules that involve pensions, not wages. Accordingly, Baltimore County's plan should be treated more leniently than a policy driven by age-based considerations.

Third, the *Kentucky Retirement Systems* Court determined that there was a clear non-age related rationale for the disparity at issue in the case. *Id.* at 2368. Similarly, Baltimore County's policy of requiring older new-hires to make larger contributions is driven by a non-age related rationale. Because older new-hires have less time to accrue earnings on their contributions, it is necessary to have them contribute more towards their retirement benefits. This reasoning is wholly unrelated to employees' age and demonstrates why the ERS does not run afoul of Section 4(a)(1).

Fourth, in *Kentucky Retirement Systems,* the Court observed that, in some circumstances, Kentucky's plan worked to the advantage of older workers. *Id.* at 2369. Again, this reasoning applies to Baltimore County's situation. As previously explained, Baltimore County contributes more towards the relative cost of funding retirement benefits for older new-hires than for younger new-hires. Thus, while older new-hires are required to make larger per-paycheck contributions, they ultimately receive the same benefits as younger new-hires while contributing a smaller net-amount towards their retirement.

Fifth, the *Kentucky Retirement Systems* Court concluded that the justification for the retirement benefit was not grounded in any of the stereotypical assumptions that the ADEA sought to eradicate. *Id.* at 2369. The same is true here. The difference in member contribution rates is not the result of Baltimore County's views on the capacity of older workers relative to

younger workers; rather, it is solely due to the time value of money. Older new-hires have less time to accumulate earnings on both the County's and their personal contributions to the ERS.

Sixth, *Kentucky Retirement Systems* reasoned that "[t]he difficulty of finding a remedy that can both correct the disparity and achieve the Plan's legitimate objective—providing each disabled worker with a sufficient retirement benefit ... further suggests that this objective and not age 'actually motivated' the Plan." *Id.* at 2369. Baltimore County has been able to implement a pension system that corrects the disparity in rates paid by older and younger new-hires. The new system does so, however, at the cost of Baltimore County's legitimate objective of making relatively equal contributions on behalf of all plan members. The new version requires the County to fund a significantly larger portion of benefits for older employees.

In response to this highly analogous case law, the EEOC points to a pair of cases decided under Title VII. *See Ariz. Governing Comm. v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) and *Los Angeles Dep't of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). In *Manhart,* the Supreme Court concluded that Title VII invalidated a retirement plan that paid equal retirement benefits to men and women of the same age, seniority, and salary, but required female employees to make larger monthly contributions. 435 U.S. at 707, 98 S.Ct. 1370. In reaching that conclusion, the Court held that the "practice, on its face, discriminated against every woman employed by [the defendant]." *Id.*

at 716, 98 S.Ct. 1370. Similarly, the *Norris* Court held that "the classification of employees on the basis of sex is no more permissible at the pay-out stage of a retirement plan than at the pay-in stage." 463 U.S. at 1081, 103 S.Ct. 3492.

What distinguishes the instant case from *Manhart* and *Norris* is that those decisions involved situations where an employer facially discriminated against its employees on the basis of sex, a protected category. In contrast, Baltimore County's system is based not on age—a protected category—but on the number of years an employee has until reaching retirement age.[3] For that reason, *Kentucky Retirement Systems* provides a far more relevant precedent. Given that the six factors underlying the Supreme Court's conclusion in that case apply equally to the instant situation, this Court finds that Baltimore County was actually motivated not by age, but by the pension status—*i.e.* the number of years until retirement eligibility—of older new-hires. In other words, the Court finds that Baltimore County was wholly motivated by something other than age and, consequently, that the ERS does not violate Section 4(a)(1) of the ADEA.

**B. Section 4(i)**

▇ In addition to making a claim under Section 4(a)(1), the EEOC contends that the older version of the ERS violates Section 4(i) because it "requires or permits ... the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age." 29 U.S.C. § 623(i)(1)(A). According to the EEOC, requiring older new-hires to

---

**3.** This is demonstrated by the fact that Baltimore County does not mandate higher contributions for all employees over forty years old. For example, a fifty-eight year old new-hire is required to pay 7.65% of his salary, but a fifty-eight year old employee who was hired at age twenty is required to pay 4.42% of his salary. This is fundamentally different from the situations in *Manhart* and *Norris,* where the employer actions affected all female employees.

contribute at higher rates for the same benefits received by younger new-hires is equivalent to reducing the rate of benefit accrual for the older new-hires. The Court disagrees with that reading of the statute and finds that the ERS does not violate Section 4(i).

■ The Congressional intent behind Section 4(a)(1) is clear; "[t]he phrase 'rate of an employee's benefit accrual' plainly refers to the rate at which a participant's benefits increase." *See Hurlic v. S. Cal. Gas Co.*, 539 F.3d 1024, 1030 (9th Cir. 2008). Given that meaning, it is unmistakable that Baltimore County does not reduce the rate of benefit accrual for older new-hires. In fact, under the version of the ERS at issue here, the rate of accrual for older new-hires is greater than for younger new-hires. For example, an employee who becomes a member of the ERS at age twenty-five would accrue a normal retirement benefit after thirty years of service, while an employee who joined the ERS at age fifty would accrue the same level of benefits after only ten years of service. This accelerated accrual rate is due to the time value of money. In order for similarly situated members of the ERS to receive the same level of benefits upon becoming retirement eligible, older new-hires must necessarily accrue benefits at a greater rate than younger new-hires.

Hence, under the plain reading of Section 4(i), Baltimore County has not violated the ADEA.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate order: (i) deny the EEOC's motion for summary judgment; (ii) grant Baltimore County's motion for summary judgment; and (iii) direct the Clerk to close the case.

---

4. In support of its position, the EEOC cites to a number of circuit court decisions. *See Hurlic*, 539 F.3d at 1032; *Hirt v. Equitable Ret. Plan for Employees, Managers & Agents*, 533 F.3d 102, 107 (2d Cir.2008); *Register v. PNC Fin. Servs. Group*, 477 F.3d 56, 68 (3d Cir.2007); *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 615 (6th Cir.2007); *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636, 639 (7th Cir.2006). These cases are inapposite because they concern cash balance plans. In a cash balance system, employees receive an unequal level of benefits upon retirement. As a result, courts have found it necessary to examine employer contributions in order to

dispel the notion that the unequal level of benefits was the result of age discrimination. *See, e.g., Hurlic*, 539 F.3d at 1031. That type of inquiry is not necessary in this case. Because Baltimore County provides an equal level of benefits to all similarly situated employees—regardless of age—there is no need to look to the County's contributions to determine whether there has been age discrimination. The undisputed facts demonstrate that older new-hires actually accrue benefits at a greater rate than younger new-hires. As such, it is equally clear that Baltimore County has not violated Section 4(i) of the ADEA.