**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CWO3 Oakley Dean Baldwin,
USCGR,

                    *Plaintiff-Appellant,*

                    v.

City of Greensboro, a North
Carolina Municipality; Mitchell
Johnson, In his official and
personal capacities; Jeryl W.
Covington, In her official and
personal capacities,

                    *Defendants-Appellees.*

No. 12-1722

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Jr., District Judge.
(1:09-cv-00742-WO-LPA)

Argued: March 20, 2013

Decided: May 6, 2013

Before DAVIS and THACKER, Circuit Judges,
and Mark S. DAVIS, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Thacker wrote the
opinion, in which Circuit Judge Davis and District Judge
Davis joined.

## COUNSEL

**ARGUED:** Gregory Mason Kash, LAW OFFICE OF GREGORY M. KASH, Raleigh, North Carolina, for Appellant. Grover Gray Wilson, WILSON HELMS & CARTLEDGE, LLP, Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Stuart H. Russell, WILSON HELMS & CARTLEDGE, LLP, Winston-Salem, North Carolina, for Appellees.

## OPINION

THACKER, Circuit Judge:

Oakley Dean Baldwin, a Chief Warrant Officer of the U.S. Coast Guard Reserves ("Baldwin" or "Appellant"), appeals the district court's grant of summary judgment in favor of the City of Greensboro, Mitchell Johnson, and Jeryl Covington (collectively, the "City"). The district court held that Baldwin's claims under the Uniform Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-35 ("USERRA"), were barred by the four-year federal "catch-all" statute of limitations, 28 U.S.C. § 1658(a). Baldwin argues that § 1658(a) does not apply to his USERRA claims. Even if it does, however, Baldwin maintains that the claims were filed within four years of their accrual because, he asserts, the statute of limitations was tolled while he was on active duty and while the United States Department of Labor ("DOL") investigated his case, and a certain amount of time should be equitably tolled due to alleged fraud on the part of the City.

We hold that § 1658(a) applies to Baldwin's USERRA claims because the language of § 1658(a) unambiguously applies to civil actions arising under laws which, like USERRA, were enacted after December 1, 1990, and USERAA's successor statute (which eliminated the statute of limitations on USERRA claims) does not apply retroactively.

We also hold that Baldwin did not file this action within four years of its accrual, notwithstanding his tolling arguments. Accordingly, we affirm.

I.

The City hired Baldwin to serve as its Solid Waste Division Manager on February 15, 2001, and in that capacity, he was supervised by Johnson and Covington. Baldwin alleges that the employment relationship was amicable and he received outstanding performance evaluations, until he told Covington in August 2002 that he would, at some point in the near future, be called up to active duty with the United States Coast Guard. After he reported that information to Covington, Baldwin claims he "began receiving harassment" from her. *See* Appellant's Br. 4 (citing J.A. 51-52).[1] And, after reporting such alleged harassment to Johnson, on December 20, 2002, Baldwin was informed that he would be subject to a reduction-in-force ("RIF"), to be effective upon his report to active duty.

Baldwin received written activation papers one month later, dated January 20, 2003, which directed him to begin service at the National Guard Armory in Wilmington, North Carolina, on January 25, 2003. On January 23, Baldwin and Johnson signed an agreement (the "Release"), in which Baldwin agreed to receive one-half pay for a period of two weeks, beginning January 25, 2003; accumulated annual leave balance as of January 25, 2003; and four weeks' severance pay "in lieu of continued employment with the City of Greensboro following his release from active duty military service." *See Baldwin v. City of Greensboro*, No. 1:09-cv-00742-WO-LPA, ECF No. 1-3 (M.D.N.C. filed Sept. 29, 2009). Notably, the Release further states, "Mr. Baldwin agrees that this arrange-

---

[1]Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

ment was made at his request and waives his right to any claims against the City of Greensboro." *Id.*

Baldwin served on active duty in Wilmington, North Carolina, from January 25, 2003, to June 30, 2003, and for intermittent periods thereafter. On July 13, 2006, Baldwin filed a USERRA claim with the DOL, claiming, "immediately after [notifying the City that he may be called to active duty], Director Covington started harassing [him] [and] threatened to demote and suspend [him] all over one garbage complaint," and "decided to RIF [his] position [when he] was the only person in Solid Waste to be called up to active duty and the only position to be cut." J.A. 86-87.

The DOL investigated Baldwin's case until March 1, 2007, at which point the case was closed at Baldwin's request. *See* J.A. 103 (Letter from DOL Veterans' Employment and Training Service to Baldwin: "*Per your request*, before making any determination as to the merits of your case I am closing your case." (emphasis added)). Baldwin served an additional 15 days of active duty between April 9, 2007, and February 22, 2008. Then, on June 18, 2008, he was called to active duty again and served without interruption until March 31, 2009. Baldwin's case was reopened by the DOL on December 3, 2008, only so that it could examine "any USERRA right that matured" during "the time frame after [Baldwin] returned from [his] military service in 2003." *Id.* at 107.

Baldwin again asked the DOL to close his file on January 14, 2009. He then filed his first complaint in federal court on September 29, 2009. *See* J.A. 13-26 (the "Complaint"). The Complaint stated that the City's actions—failing to retain and reemploy Baldwin, actions that were "motivated, in whole or in part, by . . . Baldwin's membership in the United States Coast Guard Reserves"—violated Sections 4311 and 4312 of USERRA. The Complaint requested a jury trial and liquidated damages. *Id.* at 25-26.[2] The City filed a motion to dismiss on

---

[2]Sections 4311 and 4312 of USERRA provide,

   (a) A person who . . . has an obligation to perform service in a

November 16, 2009. The magistrate judge issued a report and recommendation on August 12, 2010, recommending that the motion be denied. The district court denied the motion to dismiss in part on October 15, 2010, and granted the motion as to claims against Johnson and Covington in their official capacities.

Baldwin then filed an amended complaint on February 1, 2011. *See* J.A. 46-63 (the "Amended Complaint"). The Amended Complaint alleged the same USERRA violations as the Complaint, and, like the Complaint, asked for "a trial by

---

uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . has exercised a right provided for in this chapter[.]

38 U.S.C. § 4311(a), (b). And,

any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if —

(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

*Id.* § 4312.

jury [to] be had as to all issues so triable" and that "judgment be doubled pursuant to USERRA." *Id.* at 62-63.

The City filed a motion for summary judgment on October 3, 2011. The magistrate judge issued a report and recommendation on March 1, 2012, recommending the motion be granted because the statute of limitations had run. *See Baldwin v. City of Greensboro*, No. 1:09-cv-00742-WO-LPA, 2011 WL 1405789 (M.D.N.C. Mar. 1, 2012) (J.A. 140-60). The district court adopted the recommendation in full on May 7, 2012, thus granting the City's motion for summary judgment and dismissing the case. *See* J.A. 178-81. Baldwin timely noted this appeal.

## II.

We review the district court's grant of summary judgment de novo, "viewing the facts in the light most favorable to the nonmoving party." *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 329 (4th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's decisions on equitable tolling for abuse of discretion. *See Rouse v. Lee*, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc).

## III.

Title 28, section 1658(a) of the United States Code provides,

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). The district court held that Baldwin's USERRA claims were barred by the four-year limitations period set forth in this statute. On appeal, Baldwin argues that § 1658(a) does not apply to his claims for three reasons: (1) USERRA was simply clarifying the Veteran's Reemployment Rights Act of 1974 (the "VRRA"),[3] and thus, did not "aris[e] under" an act of Congress enacted after December 1, 1990; (2) USERRA falls into the "otherwise provided by law" exception to § 1658(a); and (3) the Veterans' Benefit and Improvement Act of 2008 ("VBIA"),[4] which eliminated the statute of limitations for USERRA claims, should apply retroactively to bar all time limitations on his claims. Alternatively, he argues that, even if § 1658(a) applies to his claims, he nonetheless filed this action within four years, taking into account legal and equitable tolling. We address these arguments in turn.

A.

1.

Baldwin's first contention is that USERRA, which Congress enacted on October 13, 1994, was simply clarifying the VRRA, which Congress enacted in 1974; thus, his claims did not "aris[e] under" an act of Congress enacted after December 1, 1990. 28 U.S.C. § 1658(a).

We first observe that one of our sister circuits has addressed this argument and found it to be without merit. *See Middleton v. City of Chi.*, 578 F.3d 655 (7th Cir. 2009). *Mid-*

---

[3]The VRRA was originally added to the United States Code on December 3, 1974, and later codified at 38 U.S.C. §§ 2021-27. *See* Pub. L. No. 93-508, 88 Stat. 1578 (Dec. 3, 1974). It was then recodified on October 29, 1992, at 38 U.S.C. §§ 4301-07.

[4]The VBIA was enacted by Pub. L. No. 110-389, 122 Stat. 4145 (Oct. 10, 2008) and codified in scattered sections of Title 38 of the United States Code.

*dleton* relies primarily upon *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which interpreted § 1658 in relation to an action filed under 42 U.S.C. § 1981. *Jones* set forth the test for determining whether § 1658 applies to a claim:

> We conclude that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990 -– and therefore, is governed by § 1658's 4-year statute of limitations -– if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

541 U.S. at 382. Like the *Middleton* court, we hold that, under the *Jones* test, Baldwin's claim "ar[ose] under" USERRA.

USERRA did more than simply clarify the VRRA. It was implemented to "simplify, and where necessary, strengthen the existing veterans' employment and reemployment rights provisions." H.R. Rep. No. 103-65, Pt. I, at 18 (1993), *reprinted in* U.S.C.C.A.N. 2449, 2451. Indeed, USERRA "established additional rights and liabilities that did not exist under the VRRA." *Middleton*, 578 F.3d at 659. The VRRA provided veterans with certain rights and privileges upon their return to the workforce. *See* 88 Stat. at 1578 (some of the purposes of the VRRA are "to promote the employment of veterans and the wives and widows of certain veterans by improving and expanding the provisions governing the operation of the Veterans Employment Service, . . . [and] to codify and expand veterans reemployment rights."). The VRRA, however, provided only injunctive relief and recovery of "any loss of wages or benefits suffered by reason of [an] employer's unlawful action." *Id.* at 1596.

USERRA, in contrast, allows a plaintiff to seek liquidated damages if he or she can prove that an employer engaged in willful discrimination, and provides for a jury trial, where these rights were not available previously. *See* 38 U.S.C. § 4323(d)(1); *see also Middleton*, 578 F.3d at 659 (citing

*Maher v. City of Chi.*, 463 F. Supp. 2d 837, 844 (N.D. Ill. 2006), for the proposition that "liquidated damages under USERRA are punitive and therefore subject to trial by jury"); *Troy v. City of Hampton*, 756 F.2d 1000, 1003 (4th Cir. 1985) ("The legislative history of the [VRRA] and the decisions of the courts which have considered the issue persuade us that claims under [the VRRA] are equitable in nature and must be tried to the court.").

Thus, USERRA changed a solely equitable claim into a legal one, and Baldwin's Amended Complaint, which explicitly asked for a jury trial and liquidated damages "pursuant to USERRA," J.A. 62, would not have been possible under the VRRA. Therefore, Baldwin's argument that his USERRA claims did not "aris[e] under" a post-1990 congressional enactment fails.

2.

Baldwin's second contention is that USERRA falls into the "otherwise provided by law" exception to § 1658(a). He provides several reasons in an attempt to support his position, including the idea that restricting the time for filing USERRA claims would "potentially [ ] interfere with enforcement" of USERRA and thwart USERRA's purpose and intent "to accommodate the exigencies that potentially cause unavailability of military service members from civilian life." Appellant's Br. 20-21. Baldwin also maintains that "because USERRA expressly prohibited application of state limitations periods, it is not the type of statute Congress had in mind when it enacted section 1658." *Id.* at 20 (internal quotation marks omitted).

None of Baldwin's arguments, however, trump the crucial fact Baldwin admits in his own brief: "USERRA did not explicitly state that no time limits applies [sic] to USERRA claims." Appellant's Br. 19. Baldwin's arguments set forth above—that USERRA was not the type of statute Congress

had in mind when it enacted § 1658(a) and that § 1658(a) would hinder USERRA's stated purpose—offer mere concern and conjecture about how the statute may be interpreted in conjunction with § 1658(a), and seeming contradictions between the two statutes. They do not, however, rise to the level of a legal exception to § 1658(a).

Baldwin's mention of USERRA's provision, "No State statute of limitations shall apply to any proceedings under this chapter," does not convince us otherwise. *See* 108 Stat. 3149, 3166 (Oct. 13, 1994). This provision, which was carried over from the VRRA, by its terms addresses only *state* statutes of limitation. Indeed, "Congress expressed no desire for USERRA claims to be immune from § 1658(a)'s limitations period." *Middleton*, 578 F.3d at 660.[5]

Moreover, we recognize that before enactment of § 1658(a), the Supreme Court observed that Congress's failure to enact a uniform statute of limitations applicable to federal causes of action created "a void which is commonplace in federal statutory law." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980). Later, in *Jones*, the Court explained, "Congress was keenly aware of the problems associated with the practice of borrowing state statutes of limitations, and that a central purpose of § 1658 was to minimize the occasions for that practice." 541 U.S. at 380.

Therefore, because the history leading up to the enactment of § 1658 "strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges," Baldwin's arguments above do not pass muster. *Jones*, 541 U.S. at 380.

---

[5]We recognize that the effect of the ban on state statutes of limitation under the VRRA was that no statutes of limitation would apply, as the federal catch-all provision, § 1658(a), was not enacted until 1990. However, "USERRA came four years after § 1658, and Congress was well aware that it had recently enacted a catch-all limitations period governing any claim under a subsequent act." *Middleton*, 578 F.3d at 660.

3.

Turning to Baldwin's VBIA contention, the VBIA was enacted on October 10, 2008, and included the following provision: "If any person seeks to file a complaint or claim with . . . a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327(b). Baldwin argues that this section was enacted to further clarify what Congress meant to do in USERRA—to bar all time limitations on claims like his—and thus, VBIA's bar on all statutes of limitation should apply retroactively to his claims.

a.

First and foremost, "retroactivity is not favored in the law[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994) (internal quotation marks omitted); *see also id.* ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.") (internal quotation marks omitted). We should "apply this time-honored presumption [against retroactivity] unless Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997).

This court has traditionally applied a three-step analysis in determining whether the presumption against retroactivity should apply. First, we must ask "whether Congress has expressly prescribed the statute's proper reach." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) (internal quotation marks omitted). Second, if "the statute contains no such express command, . . . then [we must] . . . ask[ ] whether the new statute would have retroactive effect as applied to the particular case." *Id.* (internal quotation marks omitted). Finally, if the subsequent statute would operate retroactively, "then the statute must be construed not to apply to pre-enactment conduct unless, in the third step of the

analysis, there is clear congressional intent favoring such a result." *Id.* (internal quotation marks omitted).

First, we look to the language of § 4327(b) to determine "whether Congress has expressly prescribed the statute's proper reach." *Gordon*, 637 F.3d at 458. On this point, we find the analysis in *Middleton* instructive. *Middleton* recognized that the VBIA "says nothing about whether § 4327(b) applies retroactively. In fact, the only hint in the text suggests that it applies *prospectively*: 'If any person *seeks to file* a complaint or claim . . . .'" 578 F.3d at 662 (quoting 38 U.S.C. § 4327(b)) (emphases in original). Therefore, our inquiry could end here. But even if we assume the language quoted above could be read as unclear as to the statute's scope, we are satisfied that steps two and three lead to a conclusion that § 4327(b) should not be applied retroactively.

Turning to step two of the retroactivity analysis, a statute has retroactive effect when it "attaches new legal consequences to events completed before its enactment, for example by impairing rights a party possessed when he acted, increasing a party's liability for past conduct, or imposing new duties with respect to transactions already completed." *Gordon*, 637 F.3d at 459 (internal quotation marks, citations, and alterations omitted). This analysis "is narrow, for it asks *not* whether the statute may possibly have an impermissible retroactive effect in any case, but specifically whether applying the statute *to the person objecting* would have a retroactive consequence in the disfavored sense." *Id.* (internal quotation marks omitted) (emphases in original). Moreover, whether a particular statute acts retroactively should be steered by "familiar considerations of fair notice, reasonable reliance, and settled expectations[.]" *Landgraf*, 511 U.S. at 270.

We first observe that, as explained in Section III.B., *infra*, Baldwin's claims expired on March 24, 2008, more than six months before the VBIA was enacted on October 10, 2008.

Thus, applying § 4327(b) retroactively would attach a new legal consequence to the expiration of Baldwin's claim; that is, Baldwin's claims against the City would be allowed to proceed rather than be barred. In this vein, other cases have held that applying a new statute of limitations to pre-enactment claims would have a retroactive effect by unfairly barring or reviving a claimant's suit. *See, e.g.*, *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) (holding that applying 28 U.S.C. § 2244(d)(1)—which was enacted on April 24, 1996 and created a one-year statute of limitations for habeas petitions filed by prisoners held pursuant to state court judgments—to convictions that became final before that effective date would "impermissibly attach new legal consequences to events completed before its enactment." (internal quotation marks omitted)); *Chenault v. United States Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994) ("[A] newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability." (internal quotation marks omitted)). Thus, we have no trouble concluding that applying § 4327(b) to Baldwin's USERRA claims—which would subject the City to a lawsuit that otherwise would have been barred—has retroactive effect.

Turning to the third step in our analysis, there is nothing in the legislative history of the VBIA that indicates "clear congressional intent" that § 4327(b) should apply to claims already barred by an unambiguous statute of limitations. *Gordon*, 637 F.3d at 458. Indeed, the Supreme Court has suggested that extending a statute of limitations after a previous period of limitations has expired "impermissibly revives a moribund cause of action." *Hughes Aircraft*, 520 U.S. at 950. Lower courts have likewise been hesitant to extend statutes of limitation to revive claims that are otherwise barred. *See, e.g.*, *Middleton*, 578 F.3d at 663 ("[E]ven if we could interpret § 4327(b) to apply to some USERRA claims filed before

October 10, 2008, this would not save Middleton's thirteen-year-old cause of action, which was already time-barred when § 4327(b) took effect."); *In re Enter. Mortg. Acceptance Co., LLC*, 391 F.3d 401, 406 (2d Cir. 2004) ("[B]ecause neither the language nor the legislative history of Section 804 requires that we do so, we decline to apply Section 804 retroactively to revive plaintiffs' previously expired securities fraud claims and instead defer to the longstanding presumption against retroactive application."); *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 615 (8th Cir. 1995) (holding that, even though statute of limitations on claims brought by the Kansas public employees retirement system explicitly applied retroactively, it was not "intend[ed] to revive lapsed actions"); *Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1527 (7th Cir. 1990) ("In the absence of evidence of a contrary legislative purpose, subsequent extensions of a statutory limitation period will not revive a claim previously barred." (internal quotation marks omitted)).

Consequently, in light of the presumption against retroactivity and the fact that we would be reviving otherwise stale claims in the absence of congressional intent to do so, we decline to extend § 4327(b) retroactively to Baldwin's claims.

b.

Baldwin takes this issue a step further and contends that § 4327(b) was simply a "clarification of the law," and thus, "it may be applied to cases pending on the date of the measure's enactment, without having an unconstitutional retroactive effect." Appellant's Br. 15. This analysis turns on whether § 4327(b) "constitutes a substantive change or merely a clarification of" USERRA. *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004); *see also Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1283 (11th Cir. 1999) ("[C]oncerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to

clarify relevant law rather than effect a substantive change in the law."). In *Brown*, we recognized, "when an amendment alters, even significantly alters, the original statutory language, this does not necessarily indicate that the amendment institutes a change in the law." 374 F.3d at 259 (internal quotation marks omitted). Moreover, "a change in statutory language need not *ipso facto* constitute a change in meaning or effect. Statutes may be passed purely to make what was intended all along even more unmistakably clear." *Id.* (internal quotation marks and alteration omitted).

Baldwin contends, "[t]he VBIA's legislative history reflects that the 'no time-limit' amendment was enacted for clarification and to show Congress never intended USERRA be subject to a state of [sic] federal Statute of Limitations." Appellant's Br. 12. He points to Senate Report 110-449, which states the proposed VBIA bill "would *clarify* that the original intent of Congress was that USERRA would not be subject to a federal or state statute of limitations period and specifically states that there is no time limit for a person . . . to file an action in federal or state court." S. Rep. No. 110-449, at 26 (2008), *reprinted in* 2008 U.S.C.C.A.N. 1722, 1748-49 (emphasis added).

We are not persuaded, however, that § 4327(b) clarified USERRA such that its bar on limitations periods would apply to claims like Baldwin's. In *Brown*, this court found pertinent the fact that Congress "formally declared in the titles of the relevant subsections . . . that the amendments . . . were 'clarifying' and 'technical,'" and noted, "[w]e emphasize that Congress clarified the meaning of [the relevant law] *in actual legislation* rather than only in the less formal types of subsequent legislative history, which constitute a hazardous basis for inferring the meaning of a prior congressional enactment." 374 F.3d at 259, 260 n.3 (internal quotation marks and alteration omitted) (emphasis added). Here, we have no such evidence that § 4327(b) intended to merely clarify USERRA in the legislation itself.

Even if we were to look beyond the "actual legislation," Baldwin can point only to the word "clarify" in a lone Senate report for support. That is not enough. Section 4327(b) "must also comport with other attributes of 'clarifying' legislation to avoid being a substantive change in the law." *Middleton*, 578 F.3d at 664; *see also Piamba Cortes*, 177 F.3d at 1284 ("As a general rule, 'a mere statement in a conference report of subsequent legislation as to what the Committee believes an earlier statute meant is obviously less weighty' than a statement in the amendment itself." (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980)) (alterations omitted). We, like the Seventh Circuit, "are hesitant in this case to afford that single word more weight than it deserves." *Middleton*, 578 F.3d at 664. Most importantly, however, because the language of § 1658(a) is unambiguous, and USERRA itself provides no explicit statute of limitations, there remains nothing for Congress to clarify.

In sum, we reject Baldwin's argument that the VBIA meant to graft upon preceding legislation a statute of limitations that was never explicitly provided. Therefore, § 1658(a)'s four-year statute of limitations applies to Baldwin's claims.

## B.

Having decided that § 1658(a)'s four-year statute of limitations applies to Baldwin's USERRA action, we turn now to his arguments that the limitations time was tolled—both legally and equitably—such that he timely filed his USERRA claims.

## 1.

It is first important to determine when Baldwin's action accrued. The City argues that the claims accrued on January 23, 2003, because on that day, Baldwin signed the Release, which signaled that he knew he may have had a viable cause of action based on the City's conduct. The district court

agreed in adopting the magistrate judge's recommendation on this point. *See Baldwin v. City of Greensboro*, No. 1:09-cv-00742-WO-LPA, 2011 WL 1405789 at *7 (M.D.N.C. Mar. 1, 2012) ("Plaintiff's claims accrued on January 23, 2003—the date on which Plaintiff signed the Release explicitly providing for the termination of Plaintiff's employment with the City of Greensboro and his inability to seek reemployment."); J.A. 178-81 (adopting R&R).

A federal cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 604 (4th Cir. 2002). The Amended Complaint alleged two causes of action: (1) violation of Section 4311 of USERRA for failure to retain Baldwin in his employment position; and (2) violation of Section 4312 of USERRA for failing to reemploy him. Both of these actions (or inactions) were encompassed by the Release,[6] and Baldwin had sufficient facts to know he may have viable claims. Therefore, we agree with the district court that the action accrued on January 23, 2003.

2.

Absent tolling, the statute of limitations would have expired on January 23, 2007. Baldwin makes two arguments with respect to tolling. First, he contends that his claims should be tolled by operation of law during time he was on active duty and time the DOL was investigating his case. Second, he argues that his claims should be equitably tolled "due to [d]elays [c]aused by the City and [f]raud of the City on the DOL." Appellant's Br. 26.

---

[6]The Release provides that Baldwin would accept payment "in lieu of continued employment with the City following his release from active duty," and that he "waives his right to any claims against" the City. *See Baldwin*, No. 1:09-cv-00742-WO-LPA, ECF No. 1-3. These statements unavoidably encompass failure to retain and failure to hire claims.

a.

We first note that, even taking into account the time periods of Baldwin's active duty service and the DOL investigations, he still did not file his USERRA claims within the four-year statute of limitations period, as exemplified below:

- January 23, 2003: Claim accrues (1 day elapsed)[7]

- January 25, 2003, to June 30, 2003: Active duty (tolling operational)

- July 1, 2003, to August 8, 2003 (39 days elapsed)

- August 9, 2003: Active duty (tolling operational)

- August 10, 2003, to April 17, 2004 (252 days elapsed, including 2004 leap day)

- April 18, 2004, to April 23, 2004: Active duty (tolling operational)

- April 24, 2004, to May 7, 2006 (744 days elapsed)

- May 8, 2006, to May 13, 2006: Active duty (tolling operational)

- May 14, 2006, to June 4, 2006 (22 days elapsed)

- June 5, 2006, to June 10, 2006: Active duty (tolling operational)

- June 11, 2006, to July 12, 2006 (32 days elapsed)

---

[7]*See* Fed. R. Civ. P. 6(a)(1) ("When the period [of limitations] is stated in days or a longer unit of time[,] exclude the day of the event that triggers the period.").

- July 13, 2006: DOL claim opened (closed March 1, 2007) (tolling operational)

- March 2, 2007, to April 8, 2007 (38 days elapsed)

- April 9, 2007, to April 17, 2007: Active duty (tolling operational)

- April 18, 2007, to February 16, 2008 (305 days elapsed)

- February 17, 2008, to February 22, 2008: Active duty (tolling operational)

- February 23, 2008, to March 22, 2008 (29 days elapsed, including 2008 leap day)

Total days elapsed = 1462 = 4 years (including two leap days).[8]

Because March 22, 2008, fell on a Saturday, Baldwin's claims would have expired on Monday, March 24, 2008. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]nclude the last day of the [time] period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). These extra days hardly assist Baldwin, however, because he filed suit one-and-a-half years later, on September 29, 2009. Thus, only if we accept his argument that "the [statute of limitations] [wa]s tolled during the pendency of the entire DOL investigation," including time the DOL case was closed, will Baldwin be successful in this appeal. Appellant's Br. 27. We turn next to that contention.

---

[8]The DOL again opened Baldwin's case on December 13, 2008, but only to examine the period of time after he returned from active duty service in 2003.

### b.

Baldwin claims the City undermined the DOL investigation of his action because, in a letter to the DOL, the City expressed, "Mr. Baldwin's position was eliminated due to a reduction-in-force in 2002, *prior to the City of Greensboro having any knowledge that Mr. Baldwin was recalled to active duty*." J.A. 129 (emphasis added). Baldwin claims this "misrepresentation" "thwarted the DOL's efforts to fairly investigate this USERRA claim," and "[d]elays caused by the Defendant in the DOL investigation should not be allowed to undermine when the interests of justice require vindication of the plaintiff's rights[.]" Appellant's Br. 26-27 (internal quotation marks omitted).

We agree with the district court in finding "the record lacks any evidence that the referenced letter from the City of Greensboro 'undermined' the DOL's investigation or even affected the decision by the DOL to close Plaintiff's case." *Baldwin*, 2011 WL 1405789 at *8. This is especially true because Baldwin himself asked that both of the DOL investigations be closed. *See* J.A. 103, 111. Accordingly, we cannot say the district court abused its discretion in refusing to toll the statute of limitations for the time the DOL case was closed. *See Rouse v. Lee*, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc).

As such, Baldwin's claims are barred by the four-year statute of limitations set forth in 28 U.S.C. § 1658(a). In so holding, we do not give short shrift to the edict that veterans' assistance laws should be "liberally construed" in favor of the brave men and women who have served in our armed forces, *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980); however, Congress's express language cannot be ignored.

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.