**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1106

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellee,

v.

BALTIMORE COUNTY,

Defendant – Appellant,

and

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES
LOCAL #921; BALTIMORE COUNTY FEDERATION OF PUBLIC EMPLOYEES,
FMT,AFT,AFL-CIO; BALTIMORE COUNTY SHERIFF'S OFFICE FRATERNAL
ORDER OF POLICE/LODGE NUMBER 25; BALTIMORE COUNTY LODGE NO.
4 FRATERNAL ORDER OF POLICE INCORPORATED; BALTIMORE COUNTY
FEDERATION OF PUBLIC HEALTH NURSES; BALTIMORE COUNTY
PROFESSIONAL FIRE FIGHTERS ASSOCIATION INTERNATIONAL
ASSOCIATION FIRE FIGHTERS LOCAL 1311-AFL-CIO,

Defendants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Benson Everett Legg, Senior District
Judge. (1:07-cv-02500-BEL)

Argued: January 30, 2014          Decided: March 31, 2014

Before GREGORY, SHEDD, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion,
in which Judge Gregory and Judge Shedd joined.

**ARGUED:** James Joseph Nolan, Jr., BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellant.  Paul D. Ramshaw, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.  **ON BRIEF:** Michael E. Field, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellant.  P. David Lopez, Lorraine C. Davis, Daniel T. Vail, Office of General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this interlocutory appeal, we consider whether an employee retirement benefit plan (the plan) maintained by Baltimore County, Maryland (the County) unlawfully discriminated against older County employees based on their age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 through 634. The challenged plan provision involved the different rates of employee contribution to the plan, which required that older employees pay a greater percentage of their salaries based on their ages at the time they enrolled in the plan.

The district court initially determined that the plan did not violate the ADEA, holding that the disparate rates were based on permissible financial objectives involving the number of years an employee would work before reaching "retirement age." In the first appeal of this matter, we concluded that the district court failed to consider a critical component of the plan regarding retirement eligibility, namely, that an employee's years of service could qualify the employee to retire irrespective of the employee's age. Thus, we vacated the judgment and remanded the case for further consideration.

On remand following the first appeal, the district court concluded that the plan violated the ADEA, and awarded partial summary judgment in favor of the Equal Employment Opportunity

3

Commission (EEOC) on the issue of the County's liability. The County filed this interlocutory appeal. Upon our review, we hold that the district court correctly determined that the County's plan violated the ADEA, because the plan's employee contribution rates were determined by age, rather than by any permissible factor. We further conclude that the ADEA's "safe harbor provision" applicable to early retirement benefit plans does not shield the County from liability for the alleged discrimination.[1] Accordingly, we affirm the district court's award of summary judgment on the issue of liability, and remand the case for consideration of damages.

I.

In 1945, the County established a mandatory Employee Retirement System (the plan) for all "general" County employees.[2] At that time, the plan provided that employees were eligible to retire and to receive pension benefits at age 65, regardless of the length of their employment.

---

[1] The ADEA "safe harbor provision" at issue in this case is set forth in 29 U.S.C. § 623(l)(1)(A)(ii)(I).

[2] Employees ages 59 and older when hired by the County were not required to participate in the plan. All other employees were required to enroll in the plan within two years from the first date of their employment.

4

The County did not fully fund the plan but instead required that employees contribute a certain fixed percentage of their annual salaries over the course of their employment (employee contribution rates or the rates). The employee contribution rates were established based on calculations developed by Buck Consultants (Buck), an actuarial firm employed by the County.

The County directed Buck to calculate rates to ensure that employees' contributions, as well as earnings on those contributions, would fund about one-half of employees' pension benefits. The County's contributions to the plan and related earnings would fund the remaining one-half of the pension benefits.

To achieve these objectives and to ensure that all employees received the same level of pension benefits, Buck based its calculations for employee contribution rates on the number of years that an employee would contribute to the plan before being eligible to retire at age 65. Buck also considered numerous actuarial factors, including anticipated percentage increases in salaries, probable lengths of employees' careers, the potential interest rates on earnings, mortality rates, and the likelihood of employees' withdrawal from the plan before retirement.

Using the retirement age of 65, Buck ultimately concluded that older employees who enrolled in the plan should contribute

5

a higher percentage of their salaries, because their contributions would earn interest for fewer years than the younger employees' contributions. The County adopted Buck's recommended rates and determined that "[t]he rate of contribution of the employee shall be determined by the employee's age at the time the employee actually joins" the plan. Balt. Cnty. Code § 5-1-203(1) (2006). Thus, under the County's decision, the older that an employee was at the time of enrollment, the higher the rate that the employee was required to contribute.[3]

The County modified the plan several times since its inception in 1945. In 1959, the County expanded the plan to include employees who worked in fire and police departments and permitted those employees to retire at age 60, or after 30 years of service regardless of age. By 1973, the County had reduced the "retirement age" for general County employees from 65 to 60. The County also added an alternative term of retirement eligibility that permitted general employees to retire after 30 years of service irrespective of their age. Correctional officers later became eligible to retire after only 20 years of service, regardless of age, or at age 65 with 5 years of

---

[3] In 2007, the County altered the contribution rates so that all employees paid an equal percentage of their salaries regardless of their age. That version of the plan is not at issue in this appeal.

service.    The plan referred to all these pension benefits as "normal service retirement benefits."

In 1990, the County expanded the plan to permit "early retirement" for general employees.    Under this provision, employees who were at least 55 years old and who had completed 20 years of service could retire, but would receive a reduced amount of pension benefits.

Despite the many changes to the plan over the years regarding retirement eligibility, the employee contribution rates were amended only one time during the relevant period between 1945 and 2007.    The sole adjustment to the rates occurred in 1977, when the rates were lowered slightly based on expected increases to the rate of return on invested contributions.    This reduction did not alter the fact that rates were based on an employee's age at the time of plan enrollment and were higher for older employees.    For example, after 1977, employees who enrolled in the plan at age 20 contributed 4.42% of their annual salaries, while employees who enrolled in the plan at age 40 and 50 contributed 5.57% and 7.23% of their annual salaries, respectively.

In 1999 and 2000, two County correctional officers, Wayne A. Lee and Richard J. Bosse, Sr., aged 51 and 64, respectively, filed charges of discrimination with the EEOC alleging that the County's plan and disparate contribution rates discriminated

7

against them based on their ages. The EEOC conducted an investigation and, after the parties were unable to reach a conciliation agreement, the EEOC filed the present action in the district court in September 2007.

The EEOC filed its complaint against the County on behalf of Lee, Bosse, and a class of similarly situated County employees, who were in the protected age group of 40 years of age and older when they enrolled in the plan.[4] The EEOC alleged that the plan discriminated against these employees in violation of the ADEA by requiring them to pay higher contribution rates than those paid by younger employees. The EEOC requested injunctive relief and reimbursement of "back" wages for affected employees. In response, the County denied that the plan violated the ADEA.

After conducting discovery, the parties filed cross-motions for summary judgment. In January 2009, the district court granted summary judgment to the County. EEOC v. Baltimore Cnty., 593 F. Supp. 2d 797 (D. Md. 2009). Relying on the Supreme Court's holding in Kentucky Retirement Systems v. EEOC,

---

[4] The EEOC's amended complaint also named as defendants American Federation of State; County & Municipal Employees Local #921; Baltimore County Federation of Public Employees; Baltimore County Sheriff's Office Fraternal Order of Police, Lodge Numbers 4 and 24; Baltimore County Federation of Public Heath Nurses; and Baltimore County Professional Fire Fighters Association. We refer to the defendants collectively as the County.

8

554 U.S. 135 (2008), the district court concluded that the plan's employee contribution rates were not motivated by age, but by the number of years remaining until an employee reached retirement age. 593 F. Supp. 2d at 802. Because the County intended to make "relatively equal contributions on behalf of all plan members" and "older new-hires ha[d] less time to accrue earnings on their contributions," the court concluded that age-based rates were permissible based on the financial consideration of "the time value of money." Id. at 801-02.

On appeal, we vacated the district court's judgment. See EEOC v. Baltimore Cnty., 385 F. App'x. 322 (4th Cir. 2010) (unpublished opinion). We held that the district court's decision focused only on age-based retirement eligibility, and failed to consider the plan's separate provision for service-based eligibility irrespective of age. Id. at 325. We explained the significance of this omission by providing the following example. If two correctional officers, ages 20 and 40, enrolled in the plan at the same time, both employees would become eligible for retirement after 20 years of service, irrespective of their ages when completing the years-of-service requirement. Id. Yet, the 40-year-old in this situation would be required to contribute 5.57% of his annual salary while the 20-year-old would be required to contribute only 4.42%. Id. We concluded that "[t]his disparity is not justified by the time

9

value of money because both employees contribute for the same twenty years." Id. (footnote omitted). Therefore, we remanded the case for the district court to determine whether the disparate rates were supported by "permissible financial considerations." Id.

On remand, after conducting additional discovery, the parties again filed cross-motions for summary judgment. On the issue of liability, the district court concluded that the "but-for" cause of the disparate treatment was age. EEOC v. Baltimore Cnty., 2012 U.S. Dist. LEXIS 149812 (D. Md. Oct. 17, 2012). Thus, the court granted partial summary judgment for the EEOC, holding that the County was liable for violating the ADEA. Id. at *2. Before the court considered the issue of damages, the County filed this interlocutory appeal.[5]

II.

We review the district court's award of summary judgment de novo. Baldwin v. City of Greensboro, 714 F.3d 828, 833 (4th Cir. 2013). According to the County, the district court erred as a matter of law in concluding that the plan violated the ADEA. The County contends that the district court's fundamental

---

[5] The district court granted the County's request to certify the order for interlocutory appeal under 28 U.S.C. § 1292(b). This Court granted the County's petition for permission to appeal.

error was its failure to apply the factors identified by the Supreme Court in Kentucky Retirement, 554 U.S. 135, which the County argues would have established that "the time value of money," rather than employees' ages, motivated the plan's disparate employee contribution rates.

The County maintains that the "time value of money" remained a reasonable justification for the disparate rates, even after the plan began to permit service-based retirement irrespective of age, because those service-based benefits were funded entirely by the County while employee contributions continued to subsidize only the age-based benefits. Additionally, the County asserts that the ADEA's "safe harbor provision" relating to early retirement benefit plans, 29 U.S.C. § 623(l)(1)(A)(ii)(I), authorized the County's subsidies to the plan and shielded the County from liability. We disagree with the County's arguments and address them in turn.

The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age "because of" the person's age. 29 U.S.C. §§ 623(a)(1), 631(a). The ADEA prohibits discrimination with respect to "compensation, terms, conditions, or privileges of employment," which includes "all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan." 29 U.S.C. §§ 623(a)(1), 630(l). Accordingly, it

11

generally is unlawful for an employer to maintain a retirement benefit plan that treats older employees in the protected age group differently from younger employees, unless the differentiation "is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1).

An employer violates the ADEA either by relying on a "formal, facially discriminatory policy requiring adverse treatment of employees" or by acting on an "ad hoc, informal basis" motivated by an employee's age. Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (citations omitted). In the present case, the EEOC alleges that the County's plan was facially discriminatory.

To prove facial discrimination under the ADEA, a plaintiff is not required to prove an employer's discriminatory animus.[6] Rather, a policy that explicitly discriminates based on age is unlawful regardless of the employer's intent. Ky. Ret. Sys., 544 U.S. at 147-48 (stating that a "policy that facially discriminates based on age suffices to show disparate treatment under the ADEA"); see also Int'l Union v. Johnson Controls, Inc., 499 U.S. 187, 199-200 (1992) (explaining in the context of a Title VII sex discrimination challenge that "[w]hether an employment practice involves disparate treatment through

---

[6] The parties agree in this case that there is no evidence of any discriminatory intent by the County.

12

explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination"). A plaintiff nonetheless must demonstrate that the employer engaged in disparate treatment "because of" the employee's age and, accordingly, age must be the "but-for" cause of such treatment. Gross v. FBL Fin. Serv., 557 U.S. 167, 177-78 (2009) (rejecting "mixed motive" theory of liability for claims brought under the ADEA).

Initially, we disagree with the County's contention that the district court was required to apply the ADEA discrimination factors discussed by the Supreme Court in Kentucky Retirement. See 554 U.S. at 143-47. In that case, the EEOC asserted that Kentucky's retirement plan for state employees discriminated against employees who were over 55 and became disabled, by not giving them the same additional retirement credits awarded to younger employees who became disabled. Id. at 140.

The Kentucky plan at issue permitted certain state employees to retire with "normal retirement benefits" after 20 years of service, irrespective of age, or at age 55 with five years of service. Id. at 139. However, under that plan, when an employee became disabled before qualifying for normal retirement benefits, the plan imputed enough years of service to permit immediate retirement and included those imputed years in the calculation of pension benefits. Id. at 139-40. In

13

contrast, when an employee became disabled after qualifying for normal retirement benefits, the plan did not impute any additional years of service to the calculation of pension benefits. Id. at 140.

In analyzing Kentucky's plan, the Supreme Court considered several factors that primarily focused on the question whether "pension status" unlawfully constituted a "proxy for age."[7] Id. at 142-43 (citing Hazen Paper, 507 U.S. at 613). The Court ultimately concluded that the plan did not violate the ADEA because the disparate treatment between the two classes of employees was not "actually motivated" by an employee's age. Id. at 147.

In contrast to Kentucky's plan, which treated employees differently based on their pension status rather than on their age, the County's plan mandated different contribution rates that escalated explicitly in accordance with employees' ages at the time of their enrollment in the plan. Under the County's plan, an employee's "pension status," or eligibility to retire, had no bearing on the disparate treatment requiring that older employees at plan enrollment contribute a higher percentage of

---

[7] Other factors considered by the Court included whether the plan always resulted in more advantageous results to younger employees, whether the plan relied on any "stereotypical assumptions that the ADEA sought to eradicate," and whether the alleged disparity could be corrected. Id. at 143-147.

14

their salaries than younger employees.  Thus, unlike in <u>Kentucky Retirement</u>, the district court in the present case was not confronted with the question whether "pension status" unlawfully constituted a "proxy for age," but was required to determine whether the different contribution rates based on age could be justified on any permissible basis.  Accordingly, the <u>Kentucky Retirement</u> factors were not germane to the issue before the district court.

We find no merit in the County's argument that the employee contribution rates lawfully were based on a reasonable factor other than age, namely, the "time value of money."  While this justification may have explained the basis for the disparate rates at the plan's inception, when the only possible basis for retirement was reaching retirement age, the County amended the plan in 1959 and in 1973 to permit employees to retire based solely on years of service.  The County did not modify the rates after employees were permitted the alternative benefit of retiring after working a fixed number of years.

Additionally, the County's greater subsidies for service-based benefits that were unrelated to age did not provide a reasonable basis for the disparate treatment in this case.  The example we provided in our initial decision continues to illustrate the defect in the County's position.  If a 20-year-old correctional officer and a 40-year-old correctional officer

15

enrolled in the plan at the same time, and both employees chose to retire after 20 years of service, the older employee contributed a larger percentage of his annual salary to the plan, despite receiving the same level of pension benefits as the younger employee. This disparity in the employees' contributions would occur even though the County subsidized both employees' pension benefits.

The County's plan required that employees contribute in accordance with the age-based rates regardless whether they chose to retire after reaching retirement age or after working the required number of years. Therefore, the number of years until an employee reached retirement age could not have served as the basis for the disparate rates. Because those disparate rates were not motivated by either the "time value of money" or other funding considerations, we conclude that the plan treated older employees at the time of enrollment less favorably than younger employees "because of" their age.

Our conclusion is not altered by the County's reliance on the ADEA's "safe harbor provision" in 29 U.S.C. § 623 (l)(1)(A)(ii)(I). As relevant to this appeal, that provision states that "it shall not be a violation" of the ADEA "solely because" a retirement benefit plan "provides for . . . payments [by the employer] that constitute the subsidized portion of an early retirement benefit . . . ." Id. The County asserts that

16

it is shielded from liability in the present case because the safe harbor provision authorizes the County to subsidize pension benefits awarded based on employees' years of service. We disagree.

Even if we assume, without deciding, that the service-based pension benefits qualified as an "early retirement benefit" under the safe harbor provision, we conclude that the safe harbor provision is not a defense to the challenged disparate treatment. As the district court observed, the safe harbor provision permits an employer to subsidize early retirement benefits without violating the ADEA. However, the provision does not address employee contribution rates nor does it permit employers to impose contribution rates that increase with the employee's age at the time of plan enrollment. Thus, we conclude that the safe harbor provision is inapplicable here.

## III.

For these reasons, we hold that the district court did not err in granting partial summary judgment in favor of the EEOC on the issue of the County's liability for maintaining a retirement plan in violation of the ADEA. We remand the case for further proceedings to address the issue of damages.

AFFIRMED

17