**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2216

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff – Appellant,

    v.

BALTIMORE COUNTY,

        Defendant – Appellee,

    and

BALTIMORE COUNTY FEDERATION OF PUBLIC EMPLOYEES, FMT, AFT, AFL-CIO; BALTIMORE COUNTY FEDERATION OF PUBLIC HEALTH NURSES; BALTIMORE COUNTY PROFESSIONAL FIRE FIGHTERS ASSOCIATION INTERNATIONAL ASSOCIATION FIRE FIGHTERS LOCAL 1311-AFL-CIO; BALTIMORE COUNTY LODGE NO. 4 FRATERNAL ORDER OF POLICE INCORPORATED; BALTIMORE COUNTY SHERIFF'S OFFICE FRATERNAL ORDER OF POLICE/LODGE NUMBER 25; AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, Local #921,

        Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge.  (1:07-cv-02500-RDB)

Argued:  October 26, 2017                Decided:  September 19, 2018

Before GREGORY, Chief Judge, KEENAN, Circuit Judge, and SHEDD, Senior Circuit Judge.

_____

Vacated and remanded by published per curiam opinion.

_____

**ARGUED:** Paul D. Ramshaw, Office of General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. James Joseph Nolan, Jr., BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellee. **ON BRIEF:** James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, Office of General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Michael E. Field, County Attorney, Paul M. Mayhew, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellee.

_____

PER CURIAM:

The Equal Employment Opportunity Commission (EEOC) appeals the order of the district court denying its request under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, for retroactive monetary relief from Baltimore County, Maryland (the County). For the following reasons, we vacate and remand.

I.

This case is now before us for a third time.[1] In the first appeal, we reversed a grant of summary judgment in favor of the County and remanded the case for the district court to determine whether the contribution rates of the County's age-based employee retirement benefit plan (the plan) were permissible based on financial considerations or whether they violated the ADEA. *See E.E.O.C. v. Balt. Cty.*, 385 F. App'x 322 (4th Cir. 2010). On remand, the district court concluded that the County violated the ADEA by imposing disparate plan contribution rates based on age. *See E.E.O.C. v. Balt. Cty.*, 747 F.3d 267 (4th Cir. 2014). The district court awarded partial summary judgment in favor of the EEOC on the issue of liability. *Id.* In the second appeal, we affirmed the award of summary judgment to the EEOC and remanded for consideration of damages. *See id.*

The parties later approved a strategy for the gradual equalization of contribution rates under the plan and entered into a Joint Consent Order Regarding Injunctive Relief,

---

[1] We do not recite the facts underlying the claim of age discrimination because they are not relevant to this appeal. A detailed explanation of the facts can be found in our previous opinion, *E.E.O.C. v. Balt. Cty.*, 747 F.3d 267, 270–72 (4th Cir. 2014).

which the district court approved. The order did not resolve claims for monetary relief and expressly indicated that the availability of such relief would be addressed by the court at a later date.

The court ultimately denied the EEOC's motion for retroactive monetary relief, in the form of back pay, and closed the case.[2] The court concluded that it had the discretion under the enforcement provision of the ADEA, 29 U.S.C. § 626(b), to wholly deny back pay. Alternatively, the court stated that, even if back pay were a mandatory remedy, the court would deny the relief pursuant to its equitable powers because of the EEOC's years-long delay in bringing the action. The EEOC now appeals.

## II.

The County argues that the district court properly exercised its discretion under the ADEA, 28 U.S.C. § 626(b), in denying the EEOC an award of back pay.[3] In the County's view, the ADEA grants courts broad authority "to grant such legal or equitable relief as may be appropriate," including the denial of back pay. 29 U.S.C § 626(b). In contrast, the EEOC points to the incorporation into the ADEA of certain provisions of the Fair Labor Standards Act (FLSA), which mandate that violators "shall be liable" for back pay. *See*

---

[2] The district court also denied the EEOC's motion seeking prospective monetary relief. The EEOC does not appeal this portion of the ruling.

[3] Back pay generally encompasses the compensation an employee would have received but for the employer's violation of the ADEA. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 482–83 (5th Cir. 2007), *order clarified* (Sept. 27, 2007).

29 U.S.C. §§ 216(b), 626(b). In light of this language, and because back pay is a mandatory, legal remedy under the FLSA, the EEOC urges us to adopt the same interpretation of the ADEA. Accordingly, the EEOC contends that the district court lacked the discretion to decline to award back pay. We agree with the EEOC, and conclude that a retroactive monetary award of back pay under the ADEA is mandatory upon a finding of liability.

We review this issue of statutory interpretation de novo. *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the statute is unambiguous, "our inquiry into Congress' intent is at an end, for if the language is plain and the statutory scheme is coherent and consistent, we need not inquire further." *William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007).[4] "[I]n looking to the plain meaning, we must consider the context in which the statutory words are used because '[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.'" *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).

With this rule in mind, we turn to the plain language of the statute. The ADEA enforcement provision reads, in relevant part:

---

[4] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). Additionally, Section 216 of the FLSA, which Congress incorporated into the ADEA's enforcement provision, provides:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

As an initial matter, we observe that the ADEA is a remedial statute enacted "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b); *see Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1541 (3d Cir. 1997) ("It is

6

impossible to view the ADEA as anything other than a federal remedial statute."). As a remedial statute, we employ a "standard of liberal construction [to] accomplish [Congress'] objects." *Urie v. Thompson*, 337 U.S. 163, 180 (1949).

Because Congress adopted the enforcement procedures and remedies of the FLSA into the ADEA, we construe the ADEA consistent with the cited statutory language in and judicial interpretations of the FLSA. Back pay is, and was at the time Congress passed the ADEA, a mandatory legal remedy under the FLSA. *See* 29 U.S.C. § 216(b) ("Any employer who violates the [FLSA] *shall be liable* to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." (emphasis added)); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 711 (1945) ("[U]pon violation of [the FLSA for failure to pay overtime compensation], the employer *shall be liable* for statutory wages." (emphasis added)). And we presume that Congress was aware of judicial interpretations of the FLSA when drafting associated provisions of the ADEA. *See Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 224 (4th Cir. 2014) ("Congress is presumed to act with awareness of a judicial interpretation of a statute."). Accordingly, in enacting the ADEA, Congress would have been aware that retroactive monetary damages, such as back pay, were mandatory remedies under the FLSA, and intended to incorporate such mandatory remedies into the ADEA. *See id.*; *see also Maxfield v. Sinclair Int'l*, 766 F.2d 788, 794 (3d Cir. 1985) ("[U]nlike Title VII, backpay under the ADEA is not discretionary, since it incorporates the provision of the [FLSA], making backpay a mandatory element of damages.").

7

The Supreme Court has applied a similar analysis in interpreting a different portion of the ADEA. In *Lorillard v. Pons*, the Court was presented with the question whether ADEA plaintiffs were entitled to a jury trial. 434 U.S. 575, 577 (1978). In answering this question, the Court first looked to the procedural provisions of the statute and noted that Congress directed "that the ADEA be enforced in accordance with the 'powers, remedies, and procedures' of the FLSA." *Id.* at 580 (quoting 29 U.S.C. § 626(b)). Given this Congressional direction, the Court reasoned, when the ADEA adopted an FLSA provision, that ADEA provision should be interpreted the same way its FLSA counterpart traditionally had been interpreted. *Id.* at 580–82 ("[When], as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). When the ADEA was enacted, "it was well established that there was a right to a jury trial in private actions pursuant to the FLSA." *Id.* at 580. The Court thus granted the ADEA plaintiffs the right to a jury trial. *See id.* at 582–83 ("[B]y directing that actions for lost wages under the ADEA be treated as actions for unpaid minimum wages or overtime compensation under the [FLSA], Congress dictated that the jury trial right then available to enforce that FLSA liability would also be available in private actions under the ADEA.").

The legislative history of the ADEA also indicates that Congress acted with particular precision in crafting the statute. For example, Congress considered multiple options in determining how to implement the enforcement procedures and remedies of the ADEA. One option was to authorize the Secretary of Labor to issue cease-and-desist

8

orders but not grant a private right of action. *Id.* at 578 (citing S. 830, H.R. 4221, 90th Cong., 1st Sess. (1967)). Another option was simply to adopt the normal enforcement provisions of the FLSA, permitting suits by either the Secretary of Labor or the aggrieved individual. *Id.* (citing S. 788, 90th Cong., 1st Sess. (1967)). A third option was to adopt the statutory pattern of Title VII of the Civil Rights Act of 1964 and utilize the EEOC. *Id.* Ultimately, Congress chose to treat "violations of the ADEA . . . as violations of the FLSA," and established two enforcement mechanisms—a suit by the Secretary of Labor[5] or by the individual plaintiff. *Id.* at 578–79. However, unlike the enforcement provisions of the FLSA, Congress required an individual suing under the ADEA to "give notice to the Secretary of Labor of his intention to sue" in order for the Secretary to have an opportunity "to eliminate the alleged unlawful practice through informal methods." *Id.* at 580. The right of an individual to file suit terminated if the Secretary commenced an action on his behalf. *Id.* This legislative history further suggests that Congress consciously chose to incorporate the powers, remedies, and procedures of the FLSA into the ADEA.

And finally, we disagree with the County's reliance on a trilogy of Title VII pension decisions issued by the Supreme Court: *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978); *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073 (1983); and *Florida v. Long*, 487 U.S.

---

[5] Enforcement authority was transferred from the Secretary of Labor to the EEOC in 1978. Reorg. Plan No. 1 of 1978, 92 Stat. 3781 (1978).

9

223 (1988). In all three instances, the Supreme Court held that retroactive monetary awards are discretionary under Title VII. The Court declined to award any retroactive monetary relief based on the unique burdens that retroactive awards place on employee pension plans.

Notably, however, a back pay award under Title VII is a discretionary *equitable* remedy that a court may select in awarding relief to a plaintiff. *Lorillard*, 434 U.S. at 584 ("[T]he ADEA incorporates the FLSA provision that employers 'shall be liable' for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion."); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 410 (1975); *Curtis v. Loether*, 415 U.S. 189, 197 (1974). In contrast, as previously discussed, back pay awards under the ADEA are mandatory *legal* remedies, the amount of which is to be determined by a fact finder. *See Sailor v. Hubbell, Inc.*, 4 F.3d 323, 326 (4th Cir. 1993) (holding that the "appropriate amount of back pay" due under the ADEA is a question for the jury); *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424-25 (4th Cir. 1991) (recognizing back pay as a legal remedy under the ADEA but characterizing an award of front pay under the ADEA as an equitable remedy left to the discretion of the court because it has a "restitutionary nature"). In light of the fundamental difference in the nature of back pay under the two statutes, we conclude that the Supreme Court's decisions in *Manhart*, *Norris*, and *Long* do not govern our interpretation of the ADEA.

For these reasons, we hold that retroactive monetary awards, such as the back pay sought here, are mandatory legal remedies under the ADEA upon a finding of liability.

10

## III.

Our conclusion is not altered by the County's contention that the EEOC unduly delayed in the investigation, which delay the EEOC concedes was unreasonable. This multi-year delay caused the County to incur substantial additional back pay liability. Exercising its prosecutorial discretion, the EEOC has represented to this Court that the EEOC "will not seek monetary relief for the excessive deductions that the [C]ounty made before the [EEOC] issued its letter of determination." Op. Br. 5 n.2; *see Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) ("As we have repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). The EEOC has further represented that it has secured reasonable back pay awards from public pension plans in over thirty ADEA lawsuits and that it will do the same here. Thus, the EEOC's actions in this case do not affect our analysis here.[6]

## IV.

We vacate the opinion of the district court and remand for a determination of the amount of back pay to which the affected employees are entitled under the ADEA.

*VACATED AND REMANDED*

---

[6] In light of the EEOC's concessions and its decision not to seek back pay for the period of the delay, we need not decide whether the equitable doctrine of laches or the Supreme Court's holding in *Occidental Life Insurance Co. of California v. E.E.O.C.*, 432 U.S. 355 (1977), applies to this case.