PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRE GORDON,

    *Plaintiff-Appellant,*

    v.

PETE'S AUTO SERVICE OF DENBIGH,
INCORPORATED,

    *Defendant-Appellee.*

&#125; No. 09-2393

UNITED STATES OF AMERICA,

    *Amicus Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Rebecca Beach Smith, District Judge.
(4:08-cv-00124-RBS-FBS)

Argued: October 27, 2010

Decided: February 14, 2011

Before WILKINSON, GREGORY, and WYNN,
Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Gregory and Judge Wynn joined.

**COUNSEL**

**ARGUED:** Rebecca Sue Colaw, REBECCA S. COLAW, PC, Suffolk, Virginia, for Appellant. Nathaniel S. Pollock, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Supporting Appellant. Richard Roston, LOWELL A. STANLEY, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** William M. McKee, WILLIAM M. MCKEE & ASSOCIATES, Norfolk, Virginia, for Appellee. Thomas E. Perez, Assistant Attorney General, Dennis J. Dimsey, Civil Rights Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Supporting Appellant.

---

**OPINION**

WILKINSON, Circuit Judge:

In this case, a member of the United States Navy seeks to recover damages from the company that allegedly towed and sold his SUV while he was deployed. The plaintiff initially claimed that § 307 of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. § 537, which prohibits enforcement of liens against servicemembers during military service, afforded him an implied private right of action for monetary damages. The district court disagreed and dismissed the suit. While this case was pending on appeal, however, Congress amended the SCRA to include an express private right of action. Because the amended statute plainly provides the cause of action without working an impermissibly retroactive effect, we must reverse the judgment of the district court.

I.

In March 2007, Andre Gordon received orders from the United States Navy transferring him to Norfolk, Virginia. He

and his wife signed a lease at an apartment complex in nearby Newport News, where Gordon explained that he was subject to deployment and that during his deployment his wife would return to their prior residence in Jacksonville, Florida. On the lease, he identified his 2002 Jeep Grand Cherokee and named his wife as his emergency contact.

When Gordon was subsequently deployed, he left the Jeep in the apartment complex's parking lot. In May 2007, while Gordon was still deployed, a representative from the apartment complex notified defendant Pete's Auto Service of Denbigh, Inc. ("Pete's Towing") that Gordon's Jeep had a flat tire and requested that it be towed. After towing the vehicle, Pete's Towing retained it for one month. On June 22, Pete's Towing sold the Jeep to itself, and finally sold the vehicle to a third party on June 25. Neither Pete's Towing nor the apartment complex contacted Gordon or his wife.

On December 17, 2008, Gordon brought suit in federal court against Pete's Towing, alleging both conversion under state law and a violation of SCRA § 307. Gordon claimed federal question jurisdiction under the latter, which provides that "[a] person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement." 50 U.S.C. app. § 537(a)(1).

The district court scheduled a trial for December 7, 2009, but Gordon moved for a stay on October 20, 2009 because he had received orders requiring him to travel to South Korea. Before addressing that motion, the district court sua sponte determined that it lacked subject matter jurisdiction because the SCRA did not provide a cause of action for damages. Accordingly, on November 17, 2009 the court dismissed Gordon's claims against Pete's Towing and dismissed the motion for stay as moot.

After Gordon filed this appeal, Congress addressed the very issue confronted by the district court. The Veterans' Benefits Act of 2010, signed into law by the President on October 13, 2010, added § 802 to the SCRA to provide that "[a]ny person aggrieved by a violation of [the SCRA] may in a civil action (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages." SCRA § 802(a), Pub. L. No. 111-275, 124 Stat. 2864, 2878 (to be codified at 50 U.S.C. app. § 597a). That provision also now allows prevailing plaintiffs to recover "the costs of the action, including a reasonable attorney fee." *Id.* § 802(b). The issue before us on appeal is whether this newly adopted express right of action would be impermissibly retroactive as applied to this particular case.

II.

The Servicemembers Civil Relief Act is part of a long record of congressional concern for the domestic affairs of those in military service. Congress first adopted the SCRA's predecessor, the Soldiers' and Sailors' Civil Relief Act (SSCRA), Pub. L. No. 65-103, 40 Stat. 440 (1918), during World War I "in order to prevent prejudice or injury to [soldiers' and sailors'] civil rights during their term of service and to enable them to devote their entire energy to the military needs of the Nation," *id.* § 100. The Act provided several protections for those with the "especial burdens" of active duty in the armed forces. *Dameron v. Brodhead*, 345 U.S. 322, 325 (1953); *see also, e.g.*, SSCRA §§ 200 (default judgments), 300 (eviction), 302 (mortgage foreclosure). Congress reenacted the SSCRA in 1940, Pub. L. No. 76-861, 54 Stat. 1178, and expanded the Act numerous times between 1942 and 2003, when it was renamed the Servicemembers Civil Relief Act, Pub. L. No. 108-189, 117 Stat. 2835. The SCRA now provides a variety of protections against such diverse ills as cancellation of life insurance contracts, 50 U.S.C. app.

§§ 541-549, and taxation in multiple jurisdictions, 50 U.S.C. app. §§ 570-571.

The § 802 cause of action to enforce SCRA rights is consistent with this long history of solicitude. We are mindful that the SCRA—like its predecessors—"'must be read with an eye friendly to those who dropped their affairs to answer their country's call.'" *United States v. Onslow Cnty. Bd. of Educ.*, 728 F.2d 628, 636 (4th Cir. 1984) (quoting *Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948)). But in determining whether to apply SCRA § 802 here, we need only reference the classical retroactivity analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). For under *Landgraf*, a private right of action is available to the plaintiff in this case.

### III.

"Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). This maxim is reflected in a presumption against statutory retroactivity that is "deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 265. When triggered, the presumption against retroactivity instructs courts not to apply a statute to conduct that took place before the statute went into effect.

To determine whether this presumption prevents intervening statutes from applying in any given case, a three-step analysis is appropriate. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 172 (4th Cir. 2010). First, a court must ask "whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If Congress has clearly stated that the statute should be applied retroactively, then "there is no need to resort to judicial default rules." *Id.*

If "the statute contains no such express command," however, then a court proceeds to the second step and asks "whether the new statute would have retroactive effect" as

applied to the particular case. *Id.* If not, then the presumption against retroactivity is not triggered, and the court must "give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995). If the new statute would operate retroactively, then the statute must be construed not to apply to pre-enactment conduct unless, in the third step of the analysis, there is "clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280.

## IV.

First we must determine whether Congress, in the Veterans' Benefits Act of 2010, has "expressly prescribed the statute's proper reach." *Id.* at 280. Pete's Towing argues that Congress has not, because "[t]he language of § 802 of the Servicemembers Civil Relief Act does not indicate an intention to make the law apply retroactively." *Supplemental Brief of Appellee* at 7. We agree, for the Veterans' Benefits Act is silent on this question.

The standard for expressly prescribing the temporal reach of a statute "is 'a demanding one,' requiring prescription that is truly express and unequivocal." *Ward*, 595 F.3d at 173 (quoting *INS v. St. Cyr*, 533 U.S. 289, 316 (2001)). In the Veterans' Benefits Act amendments to the SCRA, however, Congress did not include any "express and unequivocal language specifying whether it applies to lawsuits filed before its enactment." *Id.* Even Gordon, while contending that the legislative history of the Veterans' Benefits Act supports retroactive application, concedes that such an intention "is not apparent in the reading of the statute." *Supplemental Brief of Appellant* at 14. We thus conclude that Congress has neither expressly included nor excluded pre-enactment conduct from the reach of this statute.

## V.

Turning to the second step of the retroactivity analysis, we consider whether applying SCRA § 802 to Gordon's claims

against Pete's Towing would have retroactive effect. A statute does not have retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. Rather, a statute operates retroactively when it "attaches new legal consequences to events completed before its enactment," *id.* at 270, for example by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed," *id.* at 280. This inquiry is narrow, for it asks "*not* whether the statute may possibly have an impermissible retroactive effect in any case," *Supplemental Brief for Amicus Curiae United States* at 6, but specifically "whether applying the statute *to the person objecting* would have a retroactive consequence in the disfavored sense," *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (emphasis added).

## A.

Pete's Towing does not contend that SCRA § 802(a) impairs the parties' rights or imposes new duties, nor do we so hold. The servicemember already had a right to prevent foreclosure of a lien on his car under SCRA § 307(a), which proscribed Pete's Towing from "foreclos[ing] or enforc[ing] any lien on [Gordon's] property or effects without a court order" during his military service or 90 days thereafter. Section 802(a) does not alter the scope of that substantive right.

Before the enactment of SCRA § 802(a), the SCRA § 307(a) right of non-foreclosure was already enforceable in a Virginia conversion action.[1] In Virginia, the tort of conver-

---

[1] Pete's Towing argues that before § 802(a) was added, "there was no private cause of action to potentially penalize Pete's Towing for an alleged violation of the SCRA." *Supplemental Brief of Appellee* at 10. For purposes of this appeal, we do not decide whether there was a pre-existing implied federal right of action to enforce SCRA § 307, but rather assume for the sake of argument that there was not.

sion "encompasses any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003) (internal quotation omitted). The alleged sale of Gordon's Jeep was such an "act of dominion wrongfully exerted over property in denial of the owner's right" because, contrary to the requirements of SCRA § 307, no court order authorized it. In fact, § 307 contemplates that the owner's right might be enforced in a conversion action, *see* SCRA § 307(c)(2) ("The remedy and rights provided under this section are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law . . . ."), and Virginia cannot refuse to apply the substantive protections of a federal statute in its own courts. *See Testa v. Katt*, 330 U.S. 386, 394 (1947). That Gordon has an enforceable right to prevent foreclosure of a lien on his car is therefore not a change from prior law.

B.

Even if the new statute does not alter the parties' rights and duties, Pete's Towing contends that SCRA § 802(a) would have retroactive effect if applied to this case because it would increase the defendant's potential liability. Section 802(a)(2) does allow successful plaintiffs to "recover all other appropriate relief, including monetary damages," and Pete's Towing states that this liability "can encompass both compensatory damages and punitive damages." *Supplemental Brief of Appellee* at 11.

This argument fails to show, however, that this liability is any departure from the status quo under Virginia conversion law. Compensatory damages are certainly available in conversion actions, *see Avocet Dev. Corp. v. McLean Bank*, 364 S.E.2d 757, 762 (Va. 1988), as are punitive damages when the defendant's conduct was "willful and wanton," *PGI, Inc.*, 576

S.E.2d at 444. Indeed, Pete's Towing acknowledged at oral argument that both compensatory and, if appropriate, punitive damages would be available to Gordon in a state-law conversion claim. Thus SCRA § 802(a) differs from the statute found to have retroactive effect in *Landgraf*, which authorized punitive and compensatory damages where they were not previously available. 511 U.S. at 280-83.

Instead, Pete's Towing argues that applying SCRA § 802(a) to this case would create new liability because Gordon could "potentially recover punitive damages for an allegedly willful violation of the SCRA *in addition to* any punitive damages arising out of an underlying tort such as Conversion." *Supplemental Brief of Appellee* at 11 (emphasis added). This argument ignores the widely accepted prohibition on duplicative damages. Gordon may bring a Virginia conversion claim alongside his SCRA § 802 suit, *see* SCRA § 803, Pub. L. No. 111-275, 124 Stat. at 2878 (to be codified at 50 U.S.C. app. § 597b) ("Nothing in section 801 or 802 shall be construed to preclude or limit any remedy otherwise available under other law, including consequential and punitive damages."), but he may not receive a double recovery under different legal theories for the same injury. *See Martin v. Harris*, 560 F.3d 210, 221 (4th Cir. 2009) ("[T]here must be no duplication in the final award . . . ."); *see also Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 n.12 (10th Cir. 2008); *Junker v. Eddings*, 396 F.3d 1359, 1368 (Fed. Cir. 2005); *Wilkins v. Peninsula Motor Cars, Inc.*, 587 S.E.2d 581, 583 (Va. 2003) ("[W]hen the claims, duties, and injuries are the same, duplicative recovery is barred."). Because Gordon may not recover duplicative damages for the same injury under both the SCRA and Virginia conversion law, Pete's Towing faces no new liability under SCRA § 802(a).

## C.

Given that SCRA § 802(a) does not alter the rights, liabilities, or duties of Gordon or Pete's Towing, its effect in this

case is limited to providing a federal forum. In essence, this is a jurisdictional change. A statute that only addresses which court shall have jurisdiction "'normally governs [pending cases] . . . because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties.'" *Tasios v. Reno*, 204 F.3d 544, 552 (4th Cir. 2000) (alterations in original) (quoting *Landgraf*, 511 U.S. at 274). And unlike the statute at issue in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997), which had retroactive effect because it "[did] not merely allocate jurisdiction among forums" but instead "*create*[d] jurisdiction where none previously existed," SCRA § 802(a) simply allows servicemembers to enforce their SCRA rights—previously enforceable in state tribunals—in federal court.

Such statutes merely "regulate the secondary conduct of litigation and not the underlying primary conduct of the parties." *Id.* Applying the express right of action under SCRA § 802(a) to this matter thus would pose no retroactivity problem. The presumption against retroactivity is therefore not triggered,[2] and on remand the district court should "give effect to Congress's latest enactment." *Plaut*, 514 U.S. at 227.

## VI.

Even if SCRA § 802(a) would not create an impermissibly retroactive effect as applied to this case, Pete's Towing contends that § 802(b) would. That provision allows the court to "award to a person aggrieved by a violation of this Act who prevails in an action brought under [SCRA § 802(a)] the costs of the action, including a reasonable attorney fee." It is proper to analyze each section of the Veterans' Benefits Act separately for retroactive effect, for the Supreme Court has noted that "there is no special reason to think that all the diverse

---

[2]Because we find no impermissible retroactive effect, we need not reach the third step of the analysis prescribed by *Landgraf*.

provisions of the Act must be treated uniformly for such purposes." *Landgraf*, 511 U.S. at 280; *see also id.* at 280-83 (separately analyzing provisions of Civil Rights Act of 1991 for retroactive effect). We need not address whether attorney fees are available in this particular case, however, because no party has yet prevailed. The issue is therefore not before us.

## VII.

For the foregoing reasons, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*