**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2083**

───────────

PABLO ESPIN; NICHOLAS PADAO; JEREMY BELL; KEITH TAYLOR,

        Plaintiffs - Appellees,

     v.

CITIBANK, N.A.,

        Defendant - Appellant.

------------------------------------------------

AMERICAN BANKERS ASSOCIATION; CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; AMERICAN FINANCIAL SERVICES ASSOCIATION,

        Amici Supporting Appellant,

     and

ENLISTED ASSOCIATION OF THE NATIONAL GUARD OF THE UNITED STATES; MILITARY OFFICERS ASSOCIATION OF AMERICA; RESERVE ORGANIZATION OF AMERICA; UNITED STATES OF AMERICA,

        Amici Supporting Appellees.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:22-cv-00383-BO-RN)

───────────

Argued:  September 26, 2024               Decided:  January 27, 2025

Before NIEMEYER, Circuit Judge, FLOYD, Senior Circuit Judge, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

———————————

Reversed and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Floyd and Judge Bell joined.

———————————

**ARGUED:** Andrew John Pincus, MAYER BROWN LLP, Washington, D.C., for Appellant. Leah Marie Nicholls PUBLIC JUSTICE, Washington, D.C., for Appellees. Christopher Chen-Hsin Wang, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States. **ON BRIEF:** Lucia Nale, Chicago, Illinois, Archis A. Parasharami, Kevin S. Ranlett, MAYER BROWN LLP, Washington, D.C., for Appellant. Hannah Kieschnick, PUBLIC JUSTICE, Oakland, California; Knoll D. Lowney, Claire E. Tonry, SMITH & LOWNEY, PLLC, Seattle, Washington, for Appellees. Jennifer B. Dickey, Jonathan D. Urick, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Philip Bohi, AMERICAN FINANCIAL SERVICES ASSOCIATION, Washington, D.C.; Kathryn M. Barber, Richmond, Virginia, Jonathan Y. Ellis, MCGUIREWOODS LLP, Washington, D.C.; Thomas Pinder, Andrew Doersam, AMERICAN BANKERS ASSOCIATION, Washington, D.C., for Amici The Chamber of Commerce of the United States of America, American Financial Services Association, and American Bankers Association. Gregory Y. Porter, Samantha McNichols, Anne Bloom, BAILEY & GLASSER, LLP, Washington, D.C., for Amici The Enlisted Association of the National Guard of the United States, the Military Officers Association of America, and the Reserve Organization of America. Kristen Clarke, Assistant Attorney General, Sydney A.R. Foster, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Seth Frotman, General Counsel, Steven Y. Bressler, Deputy General Counsel, Kristin Bateman, Assistant General Counsel, Andrea Matthews, Senior Counsel, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus United States.

2

NIEMEYER, Circuit Judge:

In connection with their credit card accounts with Citibank, N.A, the plaintiffs, who were members of the military, commenced this class action against Citibank for violations of, among other things, the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 *et seq*. The terms and conditions of their credit cards included agreements to arbitrate "any claim, dispute, or controversy," but only "on an individual (non-class, non-representative) basis." The question here is whether the SCRA prohibits enforcement of these arbitration agreements under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

When the plaintiffs left active-duty military service, they had accrued large balances on their credit cards. Citibank, as the issuer of the plaintiffs' credit cards, had generally charged reduced or no interest on the plaintiffs' accounts while the plaintiffs were on active duty, as required by the SCRA, 50 U.S.C. § 3937. But when the plaintiffs left active duty, Citibank began charging them its standard civilian interest rates and fees on the outstanding balances, which the plaintiffs claim violated the SCRA. In their class action complaint, they alleged, among other claims, that Citibank violated the SCRA and the Military Lending Act ("MLA"), 10 U.S.C. § 987, and that it breached their contracts.

Based on the parties' agreement to arbitrate their claims, Citibank filed a motion to compel arbitration and to stay the action. Relying on the SCRA, which provides various special protections for active-duty military members, the district court denied Citibank's motion, concluding that Congress intended to preclude enforcement of agreements to arbitrate claims under the SCRA, which expressly allows for class actions, "notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a)(3). The

3

court explained that, "[w]hile the SCRA is silent as to arbitration specifically, it was nonetheless amended to codify the unwaivable right of servicemembers to bring and participate in class actions," based on the clause stating "notwithstanding any previous agreement to the contrary." Accordingly, the court held that Congress demonstrated a clear intention to displace the provisions of the FAA, which provides for the enforcement of arbitration agreements.

On appeal, Citibank contends that there is no clear and explicit language in the SCRA from which to conclude that Congress intended to override the applicability of the FAA. Accordingly, it argues that the district court should have compelled arbitration of the plaintiffs' SCRA claim under the FAA, as well as all of the other claims alleged by the plaintiffs. Therefore, it urges us to order arbitration for the entire case.

We agree generally with Citibank and therefore reverse the district court's judgment. We remand with instructions to compel arbitration according to the parties' credit card agreements with respect to all claims except those brought under the MLA, which require further assessment by the district court.

I

Pablo Espin, a North Carolina resident, served in the military, including deployments to Afghanistan and Qatar. In 2014, before his active duty, Citibank issued Espin a credit card together with its terms and conditions, which was replaced in 2016 with a new card and similar terms and conditions. When Espin left the military in 2022, he had

accrued a substantial balance on his credit card, and Citibank began to charge him its standard civilian interest rates and fees on that balance.

Nicholas Padao, an Illinois resident, was deployed to Iraq from 2018 to 2019. In 2011, American Express issued Padao a credit card, which Citibank acquired in 2016. While in the military, Padao requested benefits under the SCRA from Citibank, but he did not ultimately receive them as he "could not jump through [the SCRA's] hoops," which he contends were troublesome and unnecessary. Therefore, he continued to pay interest and fees while on active duty as generally required by his credit card agreement.

Jeremy Bell, a Georgia resident, also served in the military. In 2014, before serving on active duty, Citibank issued him a credit card together with its terms and conditions. When Bell left active duty, he had accrued a balance on his credit card account of over $10,000, on which Citibank then began to charge him its standard civilian interest rates and fees.

Keith Taylor, whose residence is not alleged, served in the military and was deployed to Iraq and Afghanistan. In 2013, before his active duty, Citibank issued Taylor a credit card together with its terms and conditions. Taylor accrued a balance of over $5,000 on his credit card account, and since leaving active duty, Citibank has charged him standard civilian interest rates and fees on his balance.

The plaintiffs claimed generally that although Citibank charged them interest of 6% or less on the balances they incurred on their Citibank credit cards while on active duty, as required by the SCRA, after they left active duty, Citibank began to charge them the much higher standard civilian interest rates and fees on those balances. They claimed that the

5

resumption of civilian interest rates was a "veteran penalty" that was not authorized by the SCRA. They also claimed that they were prejudiced by poor administration of their accounts, improper calculations, and notices that were not "clear and conspicuous."

The terms and conditions for the plaintiffs' credit card accounts with Citibank included an arbitration agreement that was substantially the same for each plaintiff. It provided, "You [the cardholder] or we [Citibank] may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called 'Claims')." The agreement also limited the scope of arbitration in several respects, including the prohibition of class arbitrations, providing:

> Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis.

The arbitration agreement included a severability clause, which provided in relevant part, "If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim."

In September 2022, the plaintiffs commenced this class action against Citibank alleging, in their amended complaint, that Citibank violated the SCRA; the MLA; the Truth in Lending Act, 15 U.S.C. § 1637(b); and the Credit CARD Act of 2009, 15 U.S.C. § 1666i-1. They also alleged claims under state law for breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty or special trust. They purported to represent a class that they defined to include:

6

All persons who requested and/or received reduced interest and/or fee benefits from Citibank on an interest-bearing obligation because of an obligor's military service, but excluding persons who executed a release of the rights claimed in this action.

Citibank filed a motion under the FAA to compel arbitration pursuant to the terms of the plaintiffs' credit card agreements and to stay the court action. The district court denied the motion, holding that the SCRA authorizes plaintiffs to file their action in federal court as a class action even if they had earlier agreed to arbitration. It therefore held that the SCRA overrode the plaintiffs' preexisting arbitration agreements that waived class proceedings. Specifically, the court relied on the language in the SCRA that authorizes servicemembers to bring class actions under the Federal Rules of Civil Procedure, "notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a)(3). Thus, the court held,

> By providing servicemembers with an unwaivable right to participate in a class action and providing that those actions may be filed in accordance with the Federal Rules of Civil Procedure, which are generally not fully applicable in arbitration proceedings, Congress has evinced its intent to proscribe waivers of the right to pursue relief as a class in federal court.

It concluded therefore that it did not have to consider application of the FAA, as Congress "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (Cleaned up). Because the court found that the SCRA authorized the plaintiffs to proceed in federal court despite an agreement to arbitrate, it "declined to reach any additional grounds raised by the parties in support of or opposition to the motion to compel arbitration." (Cleaned up).

From the district court's order dated September 29, 2023, denying Citibank's motion to compel arbitration, Citibank filed this interlocutory appeal.  *See* 9 U.S.C. § 16 (authorizing such interlocutory appeals).

## II

The SCRA is the product of "a long record of congressional concern for the domestic affairs of those in military service," and out of that concern, Congress has relieved servicemembers of many civil burdens while they serve on active duty, prohibiting, for example, default judgments, mortgage foreclosures, cancellations of life insurance contracts, and multiple taxations.  *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457–58 (4th Cir. 2011).  As relevant here, the SCRA also caps interest on military members' credit obligations.  *See* 50 U.S.C. § 3937.  We have recognized that these protections are important in enabling military members in active duty to devote themselves fully to the Nation's military needs and that we should therefore read the SCRA "with an eye friendly to those who dropped their affairs to answer their country's call."  *Gordon*, 637 F.3d at 458 (ultimately quoting *Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948)).  Thus, as we assess the appropriate forum for resolving the plaintiffs' claims, we remain sensitive to Congress's solicitude for servicemembers, believing that the substantive benefits created by Congress can be properly protected either in the district court or the arbitral forum.

In 2019, Congress amended the provision in the SCRA that creates a private right of action to state, "Any person aggrieved by a violation" of the SCRA "may in a civil action . . . be a representative party on behalf of members of a class or be a member of a class, in

8

accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a)(3). Focusing on the clause "notwithstanding any previous agreement to the contrary," the district court held that the SCRA foreclosed enforcement of the arbitration agreements that precluded class proceedings.

Citibank contends that the district court misread and misapplied this provision of the SCRA to conclude that it "overrides" the arbitration agreements made enforceable under the FAA. It argues that the SCRA did not, in "express and unequivocal terms," prohibit arbitration agreements covered by the FAA, noting that the SCRA does not even mention arbitration. It therefore urges us to reject the district court's conclusion that the SCRA overrode the FAA and thus precluded the enforcement of the plaintiffs' arbitration agreements.

The issue presented thus reduces to whether § 4042(a)(3) contains "a clearly expressed congressional intention" to override the FAA's instruction to enforce arbitration agreements. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995)).

The FAA "establishes 'a liberal federal policy favoring arbitration agreements,'" as it was adopted "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys.*, 584 U.S. at 505–06 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Congress therefore has instructed courts to "treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Id.* at 505 (quoting 9 U.S.C. § 2). The Supreme Court has concluded that arbitration agreements are enforceable "even when

9

the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 226 (1987)).

Over the years, the Supreme Court has never concluded that a federal statute overrode the enforcement of arbitration agreements under the FAA without explicitly saying so. *See Epic Sys.*, 584 U.S. at 516 (collecting cases). It has explained that courts have a "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Id.* at 502. A party arguing that one statute "displaces" another thus carries a "heavy burden." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (quoting *Epic Sys.*, 584 U.S. at 510). Accordingly, any time that a federal statute is "*silent* on whether claims under [it] can proceed in an arbitral forum, the FAA requires the arbitration agreement to be enforced according to its terms." *CompuCredit Corp.*, 565 U.S. at 104 (emphasis added). We have thus observed that the Supreme Court repeatedly "has rejected state- and court-made exceptions to the FAA's strong presumption of arbitrability." *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 506 (4th Cir. 2023) (collecting cases), *cert. denied*, 144 S. Ct. 553 (2024).

With these governing principles before us, we turn to the question whether the SCRA clearly manifests a congressional intent to override the enforcement of arbitration agreements under the FAA, such as the ones in this case.

The SCRA provision at issue provides that "[a]ny person aggrieved" by a violation of the SCRA "*may* in a *civil action* . . . be a representative party on behalf of members of

a class . . . *in accordance with the Federal Rules of Civil Procedure*, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a)(3) (emphasis added). We read that provision to *authorize* a person with a claim under the SCRA to file a *civil action* in federal court and to prosecute that action as a *class action* under the Federal Rules of Civil Procedure. We conclude that the clause "notwithstanding any previous agreement to the contrary" confirms the authority of persons aggrieved to bring *federal class actions* despite any previous agreement to the contrary. The language in § 4042(a)(3) thus defines *the action* that the person aggrieved may bring, but it does not indicate that that person *must* bring a class action or even *must* file an action in federal court. The provision is permissive, providing undampened authority to bring a federal class action. More importantly, however, the provision does not prohibit the person from resolving a SCRA claim in another forum, such as the arbitral forum. Indeed, the statute does not even mention arbitration, much less prohibit the enforcement of agreements to arbitrate.

In this case, the plaintiffs did indeed agree to arbitration, a fact that they do not dispute. And the FAA binds them to that agreement "according to its terms." *CompuCredit Corp.*, 565 U.S. at 104.

This conclusion is comfortably consistent with the cases in which the Supreme Court has concluded that, unless they do so explicitly, federal statutory remedies do not override agreements to arbitrate. Its *CompuCredit* decision is particularly relevant and indeed controlling. *See* 565 U.S. 95. In that case, the plaintiffs agreed to arbitrate disputes arising in connection with their credit cards, just as the plaintiffs did in this case. When the *CompuCredit* plaintiffs brought a class action against the credit card issuer for violating

11

the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, the credit card issuer filed a motion to compel arbitration and enforce the arbitration agreement. *Id.* at 97. The district court denied the motion, and the Ninth Circuit affirmed. *Id.* Both courts relied on the CROA's statutory language to conclude that Congress intended the plaintiffs' CROA claims to be non-arbitrable. *Id.* The court of appeals reasoned that the CROA gave plaintiffs the right to sue in federal court and prohibited any agreement waiving that right. *Id.* at 99. It relied on language in the CROA that "[a]ny waiver by any consumer of any protection provided by or any right of the consumer under this subchapter" is "void" and "may not be enforced." 15 U.S.C. § 1679f(a). The Supreme Court reversed, holding that the non-waiver clause could not be read to provide "a 'congressional command' that the FAA shall not apply" and that the arbitration agreements could not be enforced. *CompuCredit*, 565 U.S. at 101–02. The Court explained,

> It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, *in the context of a court suit*. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the "contrary congressional command" overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.

*Id.* at 100–01 (emphasis added) (cleaned up). It concluded, "Because the CROA is *silent* on whether claims under the Act can proceed in an arbitral forum, the FAA requires the arbitration agreement to be enforced *according to its terms*." *Id.* at 104 (emphasis added).

Likewise, in this case, because the SCRA is *silent* on whether claims can proceed in an arbitral forum, the FAA requires that the plaintiffs' arbitration agreements be

12

enforced according to their terms, which include a term that arbitration be conducted on an individual basis.

Emphasizing that silence is not enough to convey Congress's intent, the Court has pointed out that Congress knows how to override arbitration. The *CompuCredit* Court provided examples of explicit language by which Congress did indeed override the enforcement of arbitration agreements under the FAA. *See CompuCredit*, 565 U.S. at 103–04. Thus, for example, in the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Congress made clear that a "predispute joint-action waiver," "*whether or not part of a predispute arbitration agreement*," was unenforceable. 9 U.S.C. § 401(2) (emphasis added). Similar language, however, is not included in the SCRA; it remains silent on the point.

Moreover, the legislative history of the SCRA confirms that Congress never intended to prohibit arbitration. While legislative history is not the law, it nonetheless provides further evidence of Congress's intent not to displace the FAA by prohibiting arbitration. The House-adopted version of the 2020 National Defense Authorization Act included a provision that would have prohibited arbitration of SCRA claims without mutual consent. *See* National Defense Authorization Act for Fiscal Year 2020, S. 1790, 116th Cong. § 550H (engrossed House amendment, Sept. 17, 2019) ("[W]henever a contract with a servicemember . . . provides for the use of arbitration to resolve a controversy subject to a provision of this Act . . . , arbitration may be used to settle such controversy only if, after such controversy arises, all parties to such controversy consent in writing to use arbitration to settle such controversy"). But that provision was never enacted. Despite being

13

introduced again in 2021, the provision again failed.  Congress's failure to enact this provision in both 2019 and 2021 signals an understanding that the amendment it enacted in 2019 — 50 U.S.C. § 4042(a)(3), which is at issue here — does not prohibit arbitration provisions with class waivers.  *Compare* National Defense Authorization Act for Fiscal Year 2022, H.R. 4350, 117th Cong. § 6414 (2021), *with* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, 135 Stat. 1541 (2021).  And, citing the SCRA specifically, Congress also commissioned a report in 2019 on "the effects of the common commercial and governmental practices of including a mandatory arbitration clause in employment and consumer agreements."  National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 550F(a)(2), 133 Stat. 1198, 1384 (2019).  Congress's commission of that study also signals an understanding that § 4042(a)(3) does not prohibit arbitration, because the study would be pointless if Congress had already banned arbitration provisions with class waivers.  *See* U.S. Gov't Accountability Off., GAO-21-221, *Servicemember Rights: Mandatory Arbitration Clauses Have Affected Some Employment and Consumer Claims but the Extent of Their Effects Is Unknown* 9 (2021), https://www.gao.gov/assets/gao-21-221.pdf [https://perma.cc/XJ2J-88KR].

The plaintiffs argue that because their arbitration agreements require their claims to be resolved on an individual, non-class-representative basis, the agreements conflict with the SCRA's statutory protection of class actions.  But this argument misinterprets the scope of the SCRA's protection.  The relevant provision authorizes *class actions in federal court* "in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary."  50 U.S.C. § 4042(a)(3).  Yet, the arbitration agreements' terms

14

do not purport to address class actions in federal court in accordance with the Federal Rules of Civil Procedure.    Rather, they address the nature and scope *of the arbitration proceedings* and the relief that the arbiter can provide.

Accordingly, we reverse the district court's judgment and remand with instructions to compel arbitration in accordance with the terms of the parties' arbitration agreements, not only with respect to plaintiffs' SCRA claims but also with respect to all other claims except those brought under the MLA.  We except the MLA because, as explained further below, it does indeed manifest a congressional intent to override arbitration.  *See* 10 U.S.C. § 987(f)(4).  And we include the other claims because the plaintiffs' only ground for avoiding arbitration of them was based on the SCRA.

## III

The MLA prohibits charging consumers in the military an annual interest rate greater than 36% and requires that particular disclosures be made to those consumers before they are issued credit.  With respect to their MLA claims, the plaintiffs point out correctly that Congress did indeed explicitly override agreements to arbitrate.  The MLA provides,

> Notwithstanding section 2 of title 9 [*i.e.*, the FAA], or any other Federal or State law, rule, or regulation, no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made.

10 U.S.C. § 987(f)(4).

15

While Citibank does not challenge this point, it notes that the MLA did not cover credit card accounts until October 3, 2017. *See* 10 U.S.C. § 987(h); 32 C.F.R. § 232.13(c)(1) ("[U]ntil October 3, 2017, consumer credit does not mean credit extended in a credit card account"); Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 Fed. Reg. 43560, 43561 (July 22, 2015). Citibank argues that it extended consumer credit to the plaintiffs when opening their credit card accounts. Because that occurred for each plaintiff before October 3, 2017, Citibank contends that the MLA is not applicable at all, and the prohibition of arbitration is irrelevant. The plaintiffs respond that Citibank did indeed extend consumer credit to them after October 3, 2017, because they made purchases on their credit cards after that date. They maintain that Citibank extended consumer credit to them with each purchase. Accordingly, they argue that the MLA does indeed apply. The parties thus disagree about the meaning of "extending consumer credit." Because of its ruling on the SCRA, the district court never addressed the MLA question. Accordingly, we remand the plaintiffs' MLA claims to enable the court to determine whether the MLA applies to this case and to address any other issues on those MLA claims that the parties might raise.

\* \* \*

In sum, we reverse the district court's September 29, 2023 order, and we remand to the district court with instructions (1) to compel arbitration on all claims except those brought under the MLA, (2) to determine whether the MLA applies to the plaintiffs' credit card accounts, and if necessary (3) to resolve any other issues that the parties might raise as to those MLA claims.

16

IT IS SO ORDERED.